The United States, appellants v. Frances Richard.

The case was argued by Mr Call, for the United States; and by Mr White, for the appellee.

Mr Chief Justice MARSHALL delivered the opinion of the Court.

This claim is founded on a concession made to the appellee in June 1817 by governor Coppinger, of sixteen thousand acres of land, lying in two places, designated in the petition and concession. The surveys were made in 1824. These surveys were laid before the register and receiver, whose report was unfavourable to the title. The appellee, believing it to be well founded, presented a petition to the judge of the district, praying an examination of his title, and that it be confirmed.

The attorney for the United States, in addition to his general objection to the want of power in the governor, contends, that his decree grants permission to cut timber, but does not convey the land itself, and that the condition of the grant has not been performed. The proof is complete, that the mill, the building

of which was the consideration of the concession, was commenced in 1818, was in full operation in 1820, and has been kept up ever since. The material question is, whether the land itself, or the privilege of cutting timber, was conceded. For this purpose the petition and concession are to be examined.

Don Francisco Richard, after stating in his petition his intention to build a water saw mill, proceeds, "and as for that purpose a fit situation is necessary, such as is offered on Pottsburg creek, bounded by the lands of Strawberry Hill, and the mentioned tract not being sufficient for the indicated objects, he requests that the quantity equivalent to the object of his petition, be granted to him, about one mile distant, east of M'Queen's mill, in order to get cypress for timber; therefore he supplicates your excellency submissively, to grant him your superior license, and the expressed tract of five miles of land for the purposes he proposes to himself, in order that, what he solicits being granted, he may, with all possible brevity, commence this advantageous work, and in order that he may have in the said tract the necessary timber."

The decree grants to the petitioner, "license to construct a water saw mill, on the creek known by the name of Pottsburg, bounded by the lands of Strawberry Hill, and this tract not being sufficient, I grant him the equivalent quantity in Cedar Swamp, about a mile east of M'Queen's mill, but with the precise condition, that as long as he does not erect said machinery, this grant will be considered null, and without value nor effect, until that event takes place; and then, in order that he may not receive any prejudice from the expensive expenditures which he is preparing, he will have the faculty of using the pines and other trees comprehended in the square of five miles, or the equivalent thereof, which five miles are granted to him in the mentioned place, the avails of which he will enjoy without any defalcation whatever."

This translation was made by order of the court, by the translator.

Another translation was made, also by order of the court, by the keeper of the public archives. The difference between them is unimportant. In the last, the petitioner, after stating his object, respectfully prays, that "your excellency will grant him his superior permission, and also five miles square of land,

that he may possess thereon the necessary timber for the purposes aforesaid."

The decree grants the permission to build the mill on the lands adjoining Strawberrry Hill, and adds, " if there be not sufficient lands, the deficiency (to the amount granted), on Cedar Swamp." The condition of the grant is then stated nearly as in the preceding translation.

The petitioner asks permission to build the mill and a grant of land usually annexed to such permission. It is plainly to be inferred from these documents, that this quantity was five miles square. The same fact is collected from other similar grants. The doubt is, whether the land itself, or only the timber growing on it, is asked and conceded.

The petitioner, in the first translation, says, " that the mentioned tract" (on Pottsburg creek), "not being sufficient for the indicated objects" (that is, not amounting to five miles square), " he requests that the quantity equivalent to the object of his petition, be granted to him in Cedar Swamp. He supplicates his excellency " to grant him his license, and the expressed tract of five miles of land."

The application is obviously for land, not merely for the timber growing on it.

The concession is loosely worded, but is understood to allude to land. After granting permission to build a mill on the place designated, the governor adds, " and this tract not being sufficient," plainly indicating the tract on which the mill was to be constructed, " I grant him the equivalent quantity in Cedar Swamp." The word " tract" means land, not timber, and the words " equivalent quantity" refer to the antecedent word " tract," and consequently also mean land. After stating the condition of the grant, he adds, " which five miles are granted to him in the mentioned place."

This construction is strengthened by the express permission to take timber while he is erecting the mill, for the purpose of executing the work. While the grant of the tract is of no effect, he is permitted to use the timber on it. The grant of the tract, which depends on building the mill, was obviously supposed to pass something more than was passed by the permission to cut timber until it should have effect.

It is difficult to conceive any motive for granting the timber

and withholding the land. That could not be granted to, or used by another, while the right to the timber existed. It is not to be believed that the government wished to restrain the grantee from cultivating a part of it.

The judge of the superior court construed this concession to be a grant of land, and we concur with him in this construction. But the surveys laid before the court, were for a larger quantity of land than is expressed in the concession. That made on Pottsburg creek, which was intended for fourteen thousand four hundred acres, actually contains seventeen thousand six hundred and ten, being three thousand two hundred and ten more than was designed. This difference is accounted for, by the fact, that it includes other tracts previously appropriated, and a quantity of land covered with water. The superior court for the district has very properly, in its opinion, disallowed this excess, so far as respects the land covered with water. But after having adjudged the claim to be valid, "it confirmed and decreed the same to the said claimant, to the extent, and agreeably to the boundaries, as in the grant for the said land, and as in the surveys thereof, made by Andrew Burgevin ; provided said surveys do not include a greater quantity of land than sixteen thousand acres." But the surveys do include a greater quantity, as the petitioner himself states in his petition. This conditional confirmation of the larger survey, according to the exterior boundaries as described in the plat, when the petitioner is confessedly not entitled to all the vacant land lying within those boundaries, is, we think, not to be sustained.

This court is of opinion, that there is no error in so much of the decree of the superior court for the district of East Florida, made in this case, as declares the claim to be valid, and as confirms the title of the petitioner to the land described in the second survey mentioned in the said decree, containing sixteen hundred acres, made the 26th of November 1824, and doth affirm so much thereof. But this court is of opinion, that there is error in so much of the said decree as confirms the title of the petitioner to the land described in the first survey, made on the 1st day of November 1824, because the said survey is admitted by the petitioner to contain more than fourteen thousand four hundred acres of land not previously granted. This court doth,

therefore, reverse so much of the said decree as confirms the title of the petitioner to the land contained in the said survey, according to the exterior boundaries in the said decree described, and doth remand the cause to the said superior court, with directions to conform its decree to the decree of this court, by ordering the said tract to be so surveyed as to contain fourteen thousand four hundred acres of land not previously granted, and no more.

This cause came on to be heard on the transcript of the record from the superior court for the eastern district of Florida, and was argued by counsel; on consideration whereof, this court is of opinion, that there is no error in so much of the decree of the superior court for the district of East Florida, made in this case, as declares to be valid, and as confirms the title of the petitioner to the land described in the second survey mentioned in the said decree, containing sixteen hundred acres, made the 26th of November 1824; and doth affirm so much thereof. But this court is of opinion, that there is error in so much of the said decree, as confirms the title of the petitioner to the land described in the first survey, made on the 1st day of November 1824, because the said survey is admitted by the petitioner, to contain more than fourteen thousand four hundred acres of land not previously granted. This court doth, therefore, reverse so much of the said decree as confirms the title of the petitioner to the land contained in the said survey, according to the exterior boundaries in the said decree described; and doth remand the cause to the said superior court, with directions to conform its decree to the decree of this court, by ordering the said tract to be so surveyed, as to contain fourteen thousand four hundred acres of land not previously granted, and no more.