## THE UNITED STATES, APPELLANT, *v.* JOHN BREWARD, APPELLEE.

Florida land claim. Breward petitioned the Governor of East Florida, intending to establish a saw-mill to saw lumber on St. John's river, for a grant of five miles square of land, or its equivalent; ten thousand acres to be in the neighbourhood of the place designated, and the remaining six thousand acres in Cedar Swamp, on the west side of St. John's river, and in Cabbage Hammock, on the east-side of the river. The governor granted the land asked for, on the condition that the mill should be built; and the condition was complied with. On the 27th of May, 1817, the surveyor-general surveyed seven thousand acres under the grant, including Little Cedar Creek, and bounded on three sides by Big Cedar Creek, including the mill. This grant and survey were confirmed.

Three thousand acres were laid off on the northern part of the river St. John's, and east of the Royal Road, leading from the river to St. Mary's, four or five miles from the first survey. This survey having been made at a place not within the grant, was void; but the Court held that grantee is to be allowed to survey under the grant three thousand acres adjoining the survey of seven thousand acres, if so much vacant land can be found; and patents for the same shall issue for the land, if laid out in conformity with the decree of the Court in this case.

In 1819, two thousand acres were surveyed in Cedar Swamp, west of the river St. John's, at a place known by the name of Sugar Town. This survey was confirmed.

Four thousand acres, by survey, dated April, 1819, in Cabbage Hammock, were laid out by the surveyor-general. This survey was confirmed.

By the eighth article of the Florida Treaty, all grants of lands made before the 24th of January, 1824, by his Catholic Majesty, were confirmed; but all grants made since the time, when the first proposal by his majesty for the cession of the country was made, are declared and agreed by the treaty to be void. The survey of five thousand acres having been made at a different place from the land granted, would, if confirmed, be a new appropriation of so much land, and void, if it had been ordered by the Governor of Florida; and of course it is void, having nothing to uphold it but the act of the surveyor-general. Cited, 10 Peters, 309.

In the Superior Court of East Florida, the counsel for the claimant offered to introduce testimony in regard to the survey of three thousand acres; and the counsel of the United States withdrew his objections to the testimony. The admission of the evidence did not prove the survey to have been made. Proof of the signature of the surveyor-general to the return of survey, made the survey primâ facie evidence. Cited, Mrs. Wiggins's Case, 14 Peters, 346.

The proof of the signature of Aguilar to the certificate of a copy of the grant by the Governor of East Florida, authorizes its admission in evidence; but this does not establish the validity of the concession. To test the validity of the survey, it was necessary to give it in evidence; but the survey did not give a good title to the land.

The United States have a right to disprove a survey made by the surveyor-general, if the survey on the ground does not correspond to the land granted.

ON appeal from the Superior Court of East Florida.

The claim is founded on a petition of Breward, dated 23d August, 1816, and an alleged decree of Governor Coppinger thereon, dated the following day. The petition states, that " he intends to establish a mill to saw lumber for the supply of commerce and the province, which he wishes to situate upon St. John's river, on the creek known by the name of Little Cedar Creek; and whereas said costly fabric requires to secure in lands and timber what may be sufficient to cover the great expenses which are necessary to build it, and it being all for the benefit of the province, he prays that there may be granted to him the usual five miles square of land, or its equivalent, destining to him ten thousand acres in the neighbourhood of said place, and the remaining six thousand acres in Cedar Swamp, on the west side of St. John's river, and in Cabbage Hammock, on the east side of said river."

Governor Coppinger's decree on this petition states, that, " in consideration of the benefit and advantages which ought to result in favour of the province, if what the interested proposes is effected, the lands and permission which he solicits are granted to him; but with the express condition, that he shall not have the absolute right to them until he erects said machine."

The original of the petition and decree were not produced in evidence; neither were they to be found in the archives at St. Augustine: but a certified copy, under the hand of Thomas de Aguilar, secretary of the government, whose handwriting was proved, stating that they were true copies, faithfully taken from the original which existed in his office, was offered, and was objected to by the district attorney, and admitted by the Court.

There was also offered in evidence plats and certificates of survey, made for John Breward, by George J. F. Clark, surveyor-general:

1. Dated 27th May, 1817, for seven thousand acres of land between the branches called Cedar Creek, and Dunn's Creek, on the northern part of the river St. John's.

2. Dated 28th August, 1819, for three thousand acres on the northern part of the river St. John's, and east of the Royal Road leading from said river to St. Mary's.

3. Dated 10th October, 1819, for two thousand acres in Cedar Swamp, on the west part of the river St. John's, at a place known by the name of Sugar Town.

4. Dated 19th April, 1820, for four thousand acres, in Cabbage Hammock, on the east part of the river St. John's, and south of the branch called Dunn's Creek, which runs from Dunn's Creek to the said river.

After hearing testimony in the cause, the Superior Court made a decree in favour of the claimants for the four tracts of land; from which the present appeal is taken.

For the United States, it was contended that the decree should be reversed, because :

1. That there was not sufficient evidence that the said alleged grant or commission was ever made by Governor Coppinger.

2. That the alleged concession, if made, was on a condition precedent, which was never fulfilled.

3. That the concession, if ever made, did not contemplate that the lands conceded should be surveyed in four different tracts or parcels.

4. That the description of the lands in the grant are too vague to be the foundation of a valid survey.

5. That the plats and certificates of survey do not conform to the description of the lands in the said pretended grant.

The case was argued by Mr. Legare, the attorney-general, for the appellants; and by Mr. Wilde, for the appellee.

Mr. Justice CATRON delivered the opinion of the Court.

The petitioner asked five miles square of land, being sixteen thousand acres, on Little Cedar Creek, of St. John's river; he intending to establish a mill to saw lumber. Ten thousand acres were asked for in the neighbourhood of the place; and the remaining six thousand acres, in Cedar Swamp, on the west side of St. John's river, and in Cabbage Hammock, on the east side of that river.

On the 20th of August, 1816, the Governor of Florida decreed the same, on the condition the mill was built. The condition was complied with.

1. On the 27th of May, 1817, George F. Clark, the surveyor-general of the province, surveyed for Breward seven thousand

acres, including Little Cedar Creek; and bounded on three sides by Big Cedar Creek and Dunn's Creek; and which includes the mill. This survey is valid.

2. There were laid off three thousand acres on the northern part of the river St. John's, and east of the Royal Road, leading from the river to St. Mary's. This survey is proved to lie four or five miles from the first survey, and is on Front Creek. It was made the 28th of August, 1819.

By the eighth article of the Florida Treaty, all grants of land made before the 24th of January, 1818, by his Catholic Majesty, were confirmed. But all grants made since the 24th of January, 1818, when the first proposal by his majesty was made for the cession of the country, are declared and agreed by the treaty to be null and void. This survey having been made at a different place from the land granted, would, if confirmed, be a new appropriation of so much land; and void, if it had been ordered by the Governor of Florida, and, of course, it is void, having nothing to uphold it but the act of the surveyor-general. So this Court held in Seton's case, 10 Peters, 309. The party, however, is entitled to his entire ten thousand acres in the neighbourhood of Little Cedar Creek. The decree confirming the three thousand acre survey, is therefore reversed; and this quantity of land will be ordered by the Superior Court of East Florida, to be surveyed adjoining the seven thousand acre survey, on vacant land; the addition to conform to the fourth article of the instructions to the surveyor-general, of the 10th of June, 1811, (Land Laws United States, 1004.) The seven thousand acres, and the three thousand acres, will be laid down in connection, as one ten thousand acre survey. Not more than one-third can be bounded in front on the river St. John's, should the claimant choose to add the three thousand acres next to either side of the seven thousand acre tract adjoining the river. The seven thousand acre survey being three hundred and sixty chains deep, the ten thousand acres can only front one hundred and twenty chains.

A motion was made to the Court below, on the part of the petitioner, to be permitted to introduce testimony in regard to the survey of three thousand acres; when offered, the counsel for the United States withdrew the objections to the introduction of the paper.

It is now insisted for complainant, that the validity and legality of the survey was admitted; and Richard's Case, 8 Peters, 470.; Sibbald's Case, 10 Peters, 323; and Seton's Case, 10 Peters, 309, are relied upon.

These authorities, we think, do not sustain the argument. It being necessary to establish that such a survey had been made by the surveyor-general, proof of his signature was primâ facie sufficient to authorize the reading of the paper; and if the attorney of the United States was satisfied that the plat and certificate had been made by that officer, (about which he could hardly be mistaken,) to require proof of the fact would have been useless.

The contests on Aguilar's certificates have been numerous. Nothing was required but proof of the secretary's signature to admit in evidence the copy of the concession; so this Court held in Mrs. Wiggin's Case, 14 Peters, 346 : but when the concession was admitted, its legality was not conceded by the defendant: no such ground has been, to our recollection, assumed, nor do we think it can be assumed in regard to the survey. To test its legality by the laws and regulations of Spain, it was necessary the Court should have the survey in evidence. It was the common case of the competency of a title paper, wanting legal effect : the Court, therefore, properly admitted the paper, but improperly adjudged it gave title to the land.

3. The next survey (dated in 1819) is for two thousand acres in Cedar Swamp, west of the river St. John's, at a place known under the name of Sugar Town: Had this last designation been left out, no difficulty could be raised in regard to the fact that the survey had been located at the place granted; nor do we think this makes any difference, although a witness proves he knew nothing of such a town.

The surveyor having described the land as laid off within the description of the grant, we take the fact to be primâ facie, as he certifies it; nor do we think the certificate discredited by the further description, even should the object called for not be found. This survey is therefore confirmed.

4. The survey for four thousand acres, (dated in April, 1819,) is in Cabbage Hammock, and within the grant, taking the certificate of the surveyor-general to be primâ facie true. And this, we think, is the credit that lawfully attaches to it. His duties

were prescribed by the instructions to him, in 1811, (Land Laws, 1034;) and if his plot and certificate are lawful on their face, they must be accredited, until the United States disprove them; which they have the right to do, if the survey on the ground does not, in fact, correspond to the land granted; although the certificate may declare it to be at the proper place. This survey is also confirmed.

The cause is, however, remanded to the Court below, to be further proceeded in, as regards the rejected survey of three thousand acres.