James DOUGLASS
v.
HURWITZ CO., Inc.
No. 16326.

United States District Court
E. D. Pennsylvania.
Oct. 10, 1956.

Albert H. Gold, Philadelphia, Pa., for plaintiff.

Arthur M. Soll, Philadelphia, Pa., for defendant.

VAN DUSEN, District Judge.

The trial judge makes the following Findings of Fact and Conclusions of Law:

### Findings of Fact

1. Plaintiff is a 65-year old man who was employed by defendant as the driver of a horse and parcel post wagon, of the type described in paragraph 2 below, from 1942 to June 10, 1945, and from August 11, 1952, to October 13, 1953. His duties included storing the wagon and removing it from storage, care of the horse, and harnessing it to the wagon, as well as driving. He can only read numbers but can sign his name. He did not

know how many hours there were between 5 A. M. and 5 P. M.

2. Defendant is a Pennsylvania corporation which, during the period from 1942 to and including October 13, 1953, was engaged in interstate commerce as a contract mail carrier in the business of furnishing to the United States Post Office Department closed parcel post wagons having a capacity of mail carrying space behind the driver's seat of 240 cubic feet, together with a horse and driver. As a driver of such a wagon, plaintiff was engaged in interstate commerce.

3. Defendant maintained its stable and storage space for wagons at all times during the period from August 11, 1952, to October 13, 1953, at 1017–21 South 3rd Street, Philadelphia, Pa., and employed approximately 25 persons in the above-described business during this period.

 4. Plaintiff had a cataract in his left eye during the period prior to October 14, 1953, which obstructed his vision substantially, if not completely, in that eye. This physical defect, as well as his age, impaired the capacity of plaintiff to do the work described in paragraphs 1 and 2 above.[1] He was a good driver of a horse-drawn wagon of the type described in paragraph 2 above. Plaintiff's experience had been limited to working with horses and, at 61 years of age, his opportunities for employment would have been curtailed if he could not have been hired at a basic rate of 50¢ an hour.[2]

5. During the period from 1942 to June 10, 1945, plaintiff was compensated by defendant as a handicapped worker for his work at a basic wage rate varying from 22.5¢ an hour to 30¢ an hour in accordance with Certificates issued by the Wage and Hour Division pursuant to Section 14 of the Fair Labor Standards Act of 1938, as amended, 29 U.S.C.A. § 214, without any complaint on his part (see Exhibits D–6–A to D–6–D, inclusive —N. T. 214–6).[3]

6. Prior to August 11, 1952, plaintiff applied for work as a driver of a horse and wagon of the type described in paragraph 2 above at the offices of defendant company and signed an "Appli-

[1]. The lack of vision in one eye, together with his admission (see paragraphs 6 and 8 below) that his age prevented him from doing "any hard work," would clearly increase the time plaintiff would take in cleaning and harnessing his horse, attaching the harness to the wagon, the process of unharnessing, as well as the storing and removal from storage of the wagon. Cf. N. T. 94, 126–7, 130, 134, 150–1. The testimony that plaintiff could do the job of driving the wagon during the day better than a completely whole person (e. g., N. T. 276, 337) does not negative the necessary inference, from plaintiff's emphasis on his heavy duties before leaving and after returning to the stables and from the admissions at paragraphs 14 of D–9 and D–16, that he could not do "any hard work," that he was unable to do this particular job as well as a younger man with two good eyes would have done it.

[2]. Plaintiff's limited education and experience are apparent from paragraph 1 above. Judicial notice can be taken of the limited business opportunities in the driving and care of horses for a 61-year old man with no sight in one eye and a recent conviction for homicide in Philadelphia in 1952 and 1953.

Also, a presumption exists in favor of the correctness of the administrative ruling "that such worker should be employed at a wage lower than the minimum wage applicable under Section 6 of the Act [29 U.S.C.A. § 206] to prevent curtailment of such worker's opportunities for employment * * *." (29 C.F.R. 524.6), particularly where an authorized representative of the government agency involved testified that this employer was the subject of several investigations concerning employment of handicapped workers such as plaintiff (N.T. 227–9). Cf. Skidmore v. Swift & Co., 1944, 323 U.S. 134, 139–140, 65 S.Ct. 161, 89 L.Ed. 124; Pearson v. Walling, 8 Cir., 1943, 138 F.2d 655, 658–659.

[3]. Since plaintiff's counsel has not filed any written objection to the receipt of these exhibits in evidence in accordance with leave granted at the trial, they will be received in evidence. See 28 U.S.C.A. § 1732. The testimony shows that the terms of plaintiff's employment as a handicapped worker were explained to him in 1942, as well as when he returned to work in 1952 (N.T. 236–40).

cation For A Special Handicapped Worker's Certificate" (Exhibit D–9) [4] for the job of driving horse-drawn equipment to be supplied to the United States Post Office Department at the basic rate of 50¢. This application quoted plaintiff as stating:

> " 'I am physically unfit to do any hard work on account of my left eye (Cataract) and also on account of my age. This job is suitable for me.' "

The purpose and content of the application was explained to plaintiff by employees of defendant (N. T. 168, 237–41) prior to his signing this application.

7. As a result of this application, a Certificate (Exhibit D–4–A) authorizing defendant to employ plaintiff as a handicapped worker at the basic rate of 50¢ per hour from August 11, 1952, to July 31, 1953, was issued by the Authorized Representative of the Wage and Hour and Public Contracts Division, pursuant to Section 14 of the Fair Labor Standards Act, as amended, 29 U.S.C.A. § 214, as well as to Regulation, part 524, 29 C.F.R. 524 and ·29 U.S.C.A.App. §§ 524.1–524.13, issued under such Section 14 and to the Walsh-Healey Public Contracts Acts, 41 U.S.C.A. § 40. A copy of this certificate was furnished to plaintiff (N.T. 160).

8. Prior to July 31, 1953, plaintiff signed a renewal application to secure a "Special Handicapped Workers Certificate" for the period following July 31, 1953. This application (Exhibit D–16) [4] was virtually identical to that described in paragraph 6 above, contained the language quoted in that paragraph, and was signed after a similar explanation by an employee of defendant.

9. As a result of the renewal application (Exhibit D–16) described in paragraph 8 above, a certificate (Exhibit D–4–B), authorizing defendant to employ plaintiff as a handicapped worker at the basic rate of 50¢ an hour from August 1, 1953, to July 31, 1954, was issued by the Authorized Representative, and pursuant to the legal authorities, mentioned in paragraph 7 above. A copy of this certificate was furnished to plaintiff (N. T. 160).

10. The Wage and Hour Division made investigations of the employment practices of defendant because of their employment of over 20 employees who applied for the status of handicapped workers under Section 14 of the Fair Labor Standards Act of 1938, as amended, and Exhibits D–4–A and D–4–B were issued as a result of such investigations.

11. Plaintiff never filed any petition for review, even though the certificates mentioned in paragraphs 8 and 10 above each stated that they were "approved without prejudice to the rights of any party to petition for review" under 29 C.F.R. 524.12, 29 U.S.C.A.App. § 524.11. Plaintiff never indicated to any one that he felt he was being underpaid or worked eleven hours a day until after his employment by defendant was terminated as a result of an accident suffered by plaintiff in October 1953.

12. Defendant paid plaintiff $1,471.46 (N.T. 43) during the period August 11, 1952, to October 13, 1953, inclusive, computed at the rate of 50¢ an hour for basic pay and 75¢ an hour for overtime, in good faith and in reliance on Exhibits D–4–A and D–4–B (N.T. 257).

13. During the period from August 11, 1952, to October 13, 1953, inclusive, plaintiff worked an average of 9¾ hours per day (10 hours from 6:30 to 4:30, less 15 minutes of completely free time during the lunch period). [5] During weeks that plaintiff worked 5 or 6 days, he also worked 15 minutes extra one day each work week of 5 days or more as a result of his wagon being greased.

---

4. Exhibits D–9 and D–16 are admissible as writings made in the regular course of business. 28 U.S.C.A. § 1732.

5. Cf. N.T. 146–52. Plaintiff's testimony of 11 hours work per day is not worthy of complete belief in view of such discrepancies as his stating under oath at first that he started work at 5 A.M. (N.T. 126–7) and then, on cross-examination, stating that he started work at 5:30 (N.T. 142). Also, his testimony is inconsistent on whether the 11 hours was home-to-home time or not (N.T. 132).

14. Plaintiff became entitled to payment from defendant for the period August 11, 1952, to October 13, 1953, inclusive, in the amount of $1927.50, computed as follows:

| Weeks of Employment | Hours at Basic Rate (50¢) | Hours at Overtime Rate (75¢) |
|---|---|---|
| 2 weeks of 3 days each, being weeks ending: 8/13/52 and 1/7/53 | 48 | 10½ |
| 3 weeks of 4 days each, being weeks ending: 11/12/52, 12/31/52 and 9/30/53 | 96 | 21 |
| 15 weeks of 5 days each, being weeks ending: 8/20/52 2/25/53 7/8/53 9/3/52 4/1/53 8/19/53 10/1/52 4/22/53 8/26/53 12/3/52 5/13/53 9/9/53 2/4/53 6/3/53 10/14/53 | 600 | 131¼ |
| 42 weeks of 6 days each, being weeks ending: 8/27/52 1/14/53 6/10/53 9/10/52 1/21/53 6/17/53 9/17/52 1/28/53 6/24/53 9/24/52 2/11/53 7/1/53 10/8/52 2/18/53 7/15/53 10/15/52 3/4/53 7/22/53 10/22/52 3/11/53 7/29/53 10/29/52 3/18/53 8/5/53 11/5/52 3/25/53 8/12/53 11/19/52 4/8/53 9/2/53 11/26/52 4/15/53 9/16/53 12/10/52 4/29/53 9/23/53 12/17/52 5/6/53 10/7/53 12/24/52 5/20/53 5/27/53 | 1680 | 777 |
| Extra hours in 5 and 6 day weeks as a result of greasing of wagon, computed at ¼ hour per week: | | |
| 15 weeks at ¼ hour | | 3¾ |
| 42 weeks at ¼ hour | | 10½ |
| Totals | 2424 | 954 |

15. Findings of Fact Nos. 6, 7, and 11 requested by defendant are adopted as true and correct statements of the facts.

All requests for Findings of Fact which are inconsistent with the foregoing are denied.

### Conclusions of Law

1. Paragraphs 1 and 2 of the Conclusions of Law requested by plaintiff are adopted as true and correct Conclusions of Law.

2. Certificates granting defendant authorization to employ plaintiff at a wage rate of not less than 50¢ per hour and not less than 75¢ per hour for all hours worked in excess of the maximum number of hours permitted under the Fair Labor Standards Act and the Walsh-Healey Public Contracts Acts (exhibits

D–4–A and D–4–B) were validly issued under the terms of 29 U.S.C.A. § 214 and Part 524 of Regulations issued by the Secretary of Labor, 29 U.S.C.A.App. §§ 524.1–524.13.

█ 3. The terms of 29 U.S.C.A. § 259 [6] and § 260 [7] are not applicable to the facts established in this proceeding.

4. Plaintiff is entitled to recover $1,362.08, consisting of $456.04 of unpaid wages ($1,927.50 [8] minus $1,471.46 [9]), $456.04 of liquidated damages, and $450 as an attorney's fee, together with costs under the terms of 29 U.S.C.A. § 216(b).

All requests for Conclusions of Law which are inconsistent with the foregoing are denied.[10]

### Discussion

█ The fatal defect in defendant's case is the failure to produce persuasive evidence to substantiate the time cards (Exhibit D–1) upon the basis of which plaintiff's hours of work were computed for purposes of his payment. The records of the Philadelphia Post Office (Ex-

hibit P–1) disclose that the plaintiff's wagon was available for loading at a certain time each morning and that unloading of the wagon had been completed so that the wagon was released by the Post Office at a certain time each afternoon (N.T. 48–9). These records consist of 26 sheets,[11] of which eleven (P–1–A to P–1–K)[12] contain at least one entry showing that unloading was completed as late as 3:44 P.M. or thereafter, and three (P–1–L to P–1–N) contain at least one entry showing that unloading was completed as late as 3:39 P.M. The twelve remaining sheets show the latest unloading completed at about 3:30 P.M., but on at least one of these sheets (P–1–R) it is shown that plaintiff's wagon was available for loading as early as 6:57 A.M.[13] When these sheets are considered with the testimony of other drivers doing the same type of work for defendant as plaintiff was doing and with the testimony of the postal carriers who rode on the wagons with the drivers,[14] the finding (Finding of Fact No. 13) that plaintiff performed an average of 9¾ hours

**6.** There has been no showing that defendant's acts were "in conformity with" the certificates issued, since even if defendant, in good faith, believed plaintiff was entitled to a one-hour lunch period, plaintiff was not paid for the hours which he actually worked as established by the evidence submitted at the trial. See Discussion below.

**7.** Even though defendant acted in good faith, he did not have "reasonable grounds for believing that his act * * * was not a violation of the Fair Labor Standards Act" because he did not have reasonable grounds to compute the hours worked by plaintiff in the way that those hours were computed on the cards offered in evidence as Exhibit D–1.

**8.** See Finding of Fact No. 14.

**9.** See Finding of Fact No. 12.

**10.** Although plaintiff's requested Conclusion of Law No. 3 states that "the provisions of the Walsh-Healey Public Contracts Act (41 U.S.C.A. §§ 35–45) are also applicable to this action," the government contract (Exhibit D–15) pursuant to which plaintiff did his work after October 1, 1953, provided for payment of less than the amount ($10,000.) required for application of that Act. See 41 U.S. 145 F.Supp.–3.

C.A. § 35. Even if the former government contract (Exhibit D–14) satisfies this requirement, Section 10 of that Act, 41 U.S.C.A. § 43a requires that all wage determinations be made after the opportunity for a hearing and there was no evidence of any such opportunity in this case. The plaintiff has not sustained his burden of showing the applicability of this Act, except that it has been considered in making the computations in Finding of Fact No. 14.

**11.** The court has had them marked P–1–A to P–1–Z, inclusive.

**12.** P–1–K shows unloading completed on one day at 4:26 P.M. and on another day at 4:41 P.M. P–1–H shows unloading completed on one day at 4:11 P.M.

**13.** The cards kept by defendant (D–1) show that plaintiff started work each day at 7 A.M., which is clearly impossible on this day when he arrived at the post office prior to 6:57 A.M., after an admitted 22-minute long trip from the stable. When plaintiff reported for work at the post office before 7:15, the records of the post office (P–1) show he was released earlier in the afternoon.

**14.** See N.T. 66–90, 146, 150–1, 337–41, 347–52.

for defendant on each day that he worked is amply supported by record. The trip to the stable in the morning took approximately 25 minutes and the return trip in the afternoon approximately 35 to 40 minutes.[15]

These post office records (P–1) also show that only one-half hour was taken for lunch, as opposed to the one-hour lunch period shown on defendant's records (D–1).[16]

Counsel may submit an appropriate order for entry of judgment in accordance with the foregoing Conclusions of Law.

15. The plaintiff had duties prior to leaving the stable as well as after returning there in the afternoon (see Finding of Fact No. 1 and footnote 1).

16. The cases make clear that all of a "so-called" lunch period is not to be excluded in computing the compensable hours of work if the employees are "on call" or required to engage in duties (such as watching the horse in this case) during a part of the lunch period. See Armour & Co. v. Wantock, 1944, 323 U.S. 126, 132–134, 65 S.Ct. 165, 89 L.Ed. 118; Skidmore v. Swift & Co., supra, footnote 2; F. W. Stock & Sons, Inc., v. Thompson, 6 Cir., 1952, 194 F.2d 493.