L. Gail NERSETH, Edward W. McChesney, George J. Mangel, Plaintiffs,

v.

The UNITED STATES of America, Defendant.

No. 102–88C.

United States Claims Court.

July 24, 1989.

Karen S. Chettle, San Diego, Cal., Atty. of Record, for plaintiffs.

Carolyn E. Galbreath, with whom was Asst. Atty. Gen. John R. Bolton, Washing-

ton, D.C., for defendant. Hillary A. Stern, David M. Cohen, Director, and Robert A. Reutershan, Asst. Director, Washington, D.C., of counsel.

## ORDER

NAPIER, Judge.

This matter comes before the Court on defendant's motion to dismiss plaintiffs' overtime compensation claims for lack of jurisdiction and failure to maintain an actionable claim under RUSCC 12(b)(1) and 12(b)(4). Defendant asserts that plaintiffs' claims for evening overtime compensation are barred by the applicable statute of limitations, while plaintiffs' mealtime compensation claims warrant dismissal under United States Claims Court Rule 12(b)(4) for failure to state a claim upon which relief can be granted. For the reasons discussed below, defendant's motion to dismiss for lack of subject-matter jurisdiction under 12(b)(1) is granted. Defendant's motion to dismiss for failure to state an actionable claim under 12(b)(4) is herein converted into a motion for summary judgment[1], which is granted as to those claims not dismissed under 12(b)(1).

## FACTS

At all times set forth in the complaint, plaintiffs were employed as dispatchers and served in the protection of the Cleveland National Forest in San Diego, California. Sometime in September of 1979, plaintiff McChesney was informed by defendant that a Federal Telephone Service (hereinafter referred to as "FTS") telephone would be installed in his residence. Defendant explained that each of the plaintiffs would have such a system installed in their respective residences, so that they could provide 24 hour emergency telephone coverage for the Forest.

Upon notification of the installation of an FTS telephone system in her residence,[2] plaintiff Nerseth asked her supervisor how she would be compensated for additional duties performed. Shortly thereafter, the parties agreed to an informal, temporary arrangement whereby plaintiffs would be paid for 2 hours of overtime each evening they provided telephone coverage in their homes.

Each plaintiff was assigned telephone coverage duty approximately two evenings per week. Duty began at 6:00 p.m. and ended at 7:00 a.m. the following morning. Sleeping hours were established from 11:00 p.m. until 7:00 a.m.

From January 1981 until the Forest Service arranged for an answering service on May 10, 1984,[3] plaintiffs seek overtime compensation for the evening duty hours as stated above, minus the 2 hours for which they were compensated pursuant to the informal agreement.

Under the provisions of sections 1 through 19 of the Fair Labor Standards Act (hereinafter referred to as "FLSA" or "Act"), plaintiff Nerseth claims $12,965.70; plaintiff McChesney claims $11,742.86; and plaintiff Mangel claims $5,400.26.

Plaintiffs Nerseth and McChesney also allege entitlement, under the FLSA, to overtime compensation for meal periods taken in the dispatch office. On occasion when only one dispatcher was available for telephone coverage, plaintiff-dispatchers were required to perform duties during their regularly scheduled meal periods. As a result, Nerseth is requesting overtime pay in the amount of $142.97 for pay periods 8 through 26 in 1984. Plaintiff McChesney is requesting overtime pay in the total amount of $933.06 for pay periods 14 through 26 in 1984, 1 through 26 in 1985, 1 through 26 in 1986, and 1 through 6 in 1987.

---

**1.** United States Claims Court Rule 12(b)(4) requires that upon review of matters outside the pleadings, a 12(b)(4) motion shall be deemed one for summary judgment.

**2.** The FTS systems were installed in January 1981, along with other essential operating devices.

**3.** The answering service which was installed obviated the need for plaintiffs' evening duties.

Prior to initiating this suit, plaintiffs sought administrative relief. Plaintiff Nerseth filed both an informal and a formal grievance with the Forest Service. On March 16, 1984, in response to Nerseth's informal grievance of March 1, 1984, the Forest Service announced its intention to install an answering service. On January 8, 1985, the Forest Supervisor determined that no resolution could be reached on Nerseth's informal grievance, as follows:

> * * * agreement could not be reached on the interpretation of actual time worked versus standby duty, and compensating for meal periods when one dispatcher was on duty and unable to leave the work area. Since the claim hinges on these two interpretations, especially the "actual time worked" issue, we are unable to process your claim as submitted.

Plaintiffs' complaint para. 28.

Nerseth's formal grievance filed with the Department of Agriculture on January 21, 1985, was denied on August 7, 1985. A subsequent claim to the General Accounting Office (GAO) for night telephone duty compensation was also disallowed on March 6, 1987.

Between October 7 and November 11, 1985, plaintiffs McChesney and Mangel had also submitted informal and formal grievances to the Regional Forester. These claims were denied, while subsequent proceedings with the GAO on this matter continue under review. Defendant asserts that GAO will not consider plaintiffs' requests because the Comptroller General will not act upon matters that are the subject of litigation.

Under the provisions of the Act as stated in 29 U.S.C. §§ 201–19, allowing compensation for overtime, plaintiff Nerseth seeks relief in the total amount of $13,108.67, plus an additional equal amount as liquidated damages together with an additional sum as and for reasonable attorney fees. Plaintiff McChesney seeks $12,700.97 as compensation for overtime work, plus an additional equal amount as liquidated dam-

ages together with an additional sum as and for reasonable attorney fees. Plaintiff Mangel requests compensation in the amount of $5,400.26, plus an additional equal amount as liquidated damages together with an additional sum as and for reasonable attorney fees.

### DISCUSSION

In its motion, defendant argues two grounds for dismissal: (1) virtually all of plaintiffs' claims are barred by the statute of limitations; and (2) whatever claims remain should be dismissed for failure to state a claim upon which relief can be granted.

This action was originally filed in the U.S. District Court of California on May 26, 1987. Suits against the federal Government for amounts exceeding $10,000 must be filed in the Claims Court under the Little Tucker Act, 28 U.S.C. § 1346(a)(2).[4] Accordingly, the district court transferred plaintiffs' case to this Court on February 16, 1988.

Plaintiffs take the position that if their case must be heard in the Claims Court, then under 28 U.S.C. § 1631, their complaint is considered as filed on the date it was originally filed with the district court. Section 1631 states:

> Whenever a civil action is filed in a court as defined in section 610 of this title or an appeal, including a petition for review of administrative action, is noticed for or filed with such a court and that court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action or appeal to any other such court in which the action or appeal could have been brought at the time it was filed or noticed, and the action or appeal shall proceed as if it had been filed in or noticed for the court to which it is transferred on the date upon which it was actually filed in or noticed for the court

---

4. *Graham v. Henegar,* 640 F.2d 732 (5th Cir.), *reh'g denied,* 646 F.2d 566 (1981); *Huddleston v.* *Donovan,* 524 F.Supp. 179 (N.D.Ill.1981); *Zumerling v. Devine,* 769 F.2d 745 (Fed.Cir.1985).

from which it is transferred.[5]

28 U.S.C. § 1631.

Thus, pursuant to this provision, May 26, 1987, the date the case was originally filed in the United States District Court, Southern District of California, is the effective filing date of plaintiffs' claims.

Under § 7(a)(1) of the Fair Labor Standards Act, an employer is required to compensate employees who work more than 40 hours in one week. Such compensation must amount to not less than one and one-half times their regular rate. Employees who are denied overtime compensation by their employer may bring a claim to recover such unpaid wages in accordance with § 16(b) of the Act which provides, in pertinent part:

> Any employer who violates the provisions of * * * section 207 of this title shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages * * *. An action to recover the liability prescribed * * * may be maintained against any employer (including a public agency) in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated * * *.

29 U.S.C. § 216(b).

The Act imposes a limitation, however, on the time period that actions under 216(b) must be filed. Section 255(a) of Title 29 U.S.C. provides:

> Any action commenced on or after May 14, 1947, to enforce any cause of action for unpaid minimum wages, unpaid overtime compensation, or liquidated damages, under the Fair Labor Standards Act of 1938, as amended, the Walsh–Healey Act, or the Bacon–Davis Act—
>
> (a) if the cause of action accrues on or after May 14, 1947—may be commenced within two years after the cause of action accrued, and every such action shall

be forever barred unless commenced within two years after the cause of action accrued, except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued * * *.

*Evening Compensation Claims*

Defendant contends that pursuant to the above, plaintiffs had 2 years from the time their cause of action accrued within which to file their lawsuit. They argue that plaintiffs' evening compensation claims accrued on the dates of the actual alleged overtime activity, January 1981 through May 10, 1984, and that since this lawsuit was not filed until May 26, 1987, the action is barred by the statute of limitations for these claims. Defendant asserts that plaintiffs' mere allegation of a willful violation is insufficient to invoke the 3–year statute of limitations period as set forth in section 255(a).

Plaintiffs take the position that their action is not barred by the statute of limitations because: (1) in their pursuit of administrative relief, they were led to believe that their overtime claims would receive due compensation, and therefore the statute of limitations was tolled; and (2) because they allege that defendant acted willfully in denying them relief for overtime work, the 3–year, and not the 2–year statute of limitations set forth in § 255(a) must be applied.

Plaintiffs allege in their complaint that defendant led them to believe that their claims would be settled. They maintain that any delay in filing in this Court is solely attributable to defendant's lulling tactics. Specifically, plaintiffs point to the following memoranda to show defendant's implications of relief:

° March 16, 1984—answering service would be implemented as quickly as possible.

° March 22, 1984—meeting scheduled among all parties to determine equitable

---

5. Plaintiffs cited 28 U.S.C. § 1406(c) for the same proposition as § 1631. Section 1406(c) was struck in 1982.

compensation for hours worked from January 8, 1981 until an answering service was contracted.

° March 1984 memorandum—personnel officer admits plaintiffs are entitled to back pay.

° May 30, 1984—pay adjustment package is sent to Regional Pay Specialist.

° September 12, 1984—Regional Office Director of personnel management states he did not have sufficient information to determine the dispatcher's compensation.

° September 21, 1984—Fire Management Officer of Cleveland National Forest states that personnel will be meeting with the dispatchers regarding the back pay claims.

° December 28, 1984—Letter from Regional Office Personnel stating that Cleveland Personnel retains the authority and responsibility for handling this claim and is therefore forwarding the material back to that office.

° January 8, 1985—Forest Supervisor for Cleveland National Forest states they are unable to process claim.

While plaintiffs argue that these aforementioned meetings and statements effectively promised them administrative relief, defendant contends that pursuit of administrative remedies, no matter how promising, does not extend the statute of limitations period. Defendant points out that nothing prevented plaintiffs from filing their lawsuit while their administrative claims and attendant settlement negotiations were pending.

■ The filing of an administrative claim does not toll or otherwise affect the 2–year limitations period imposed by § 255(a) on seeking judicial relief for violations of the Fair Labor Standards Act. In *Unexcelled Chemical Corp. v. United States,* 345 U.S. 59, 73 S.Ct. 580, 97 L.Ed. 821 (1953), the Supreme Court addressed the issue whether the 2–year limitations period set out in § 255(a) begins to run as of the date of the

violation or not until administrative relief is exhausted.[6] The Court held:

> The contention is that the cause of action accrues, and the two-year period begins to run, only after it is administratively determined by the Department of Labor * * *. We take the opposing view. We conclude that "the cause of action accrued," when * * * [the violation of the Act occurred] * * *. A cause of action is created when there is a breach of duty owed the plaintiff * * *. The fact that due deference to the administrative process should make a court hold its hand until the administrative proceedings before the Secretary of Labor have been completed is a matter of judicial administration of of no relevancy here.

345 U.S. at 65–66, 73 S.Ct. at 583–84.

Accordingly, plaintiffs' claims were not subject to nor limited by the exhaustion of agency determination. Any representations made to plaintiffs concerning the favorable resolution of their claims did not preclude their access to the courts.

■ Plaintiffs contend that the statute of limitations is tolled under the doctrine of equitable estoppel as they were led to believe that adequate compensation was forthcoming. This Court takes account of the equitable tolling issue as stated in *Holmberg v. Armbrecht,* 327 U.S. 392, 66 S.Ct. 582, 90 L.Ed. 743 (1946), that "this equitable doctrine is read into every federal statute of limitation." *Id.* at 397, 66 S.Ct. at 585. It further recognizes the different variations of this doctrine as relied upon by plaintiffs. *See Bonham v. Dresser Industries, Inc.,* 569 F.2d 187 (3d Cir.1977); *Abbott v. Moore Business Forms, Inc.,* 439 F.Supp. 643 (D.N.H.1977). The Court concludes, however, that the equitable tolling doctrine is inapplicable in this action.

■ As noted in *Holmberg, supra,* 327 U.S. at 397, 66 S.Ct. at 585, *quoting Bailey*

---

**6.** While the action in *Unexcelled Chemical Corp.* was brought by the United States under the Walsh–Healey Act, the matter presently before the Court is brought pursuant to the FLSA. Both Acts, however, are governed by the statute of limitations set out in 29 U.S.C. § 255(a) and, accordingly, the Supreme Court's determination in *Unexcelled Chemical Corp.* concerning the commencement of the running of the statute is equally applicable here.

*v. Glover*, 88 U.S. (21 Wall.) 342, 348, 22 L.Ed. 636 (1874):

> \* \* \* where a plaintiff has been injured by fraud and "remains in ignorance of it without any fault or want of diligence or care on his part, the bar of the statute does not begin to run until the fraud is discovered, though there be no special circumstances or efforts on the part of the party committing the fraud to conceal it from the knowledge of the other party."

*Id.*

Application of this doctrine requires that a plaintiff is excusably unaware of the existence of his cause of action at the time it accrues. *See Welcker v. United States*, 752 F.2d 1577 (Fed.Cir.1985), *cert. denied*, 474 U.S. 826, 106 S.Ct. 83, 88 L.Ed.2d 68 (1985); *Braude v. United States*, 218 Ct.Cl. 270, 585 F.2d 1049 (1978); *Japanese War Notes Claimants Ass'n. of Phil., Inc. v. United States*, 178 Ct.Cl. 630, 373 F.2d 356, *cert. denied*, 389 U.S. 971, 88 S.Ct. 466, 19 L.Ed.2d 461 (1967), *reh'g denied*, 390 U.S. 975, 88 S.Ct. 1020, 19 L.Ed.2d 1192 (1968).

As defendant points out, plaintiffs were clearly aware that they were not being paid overtime compensation for the time periods at issue. Plaintiffs' paychecks were the best evidence that the overtime payments had not been made. In addition, plaintiffs' filing of informal and formal agency grievances as well as their claims to the General Accounting Office indicate that they were well aware that they were not receiving overtime benefits. Though defendant may have implied to plaintiffs that they would receive overtime pay, in filing their formal grievances and claims with the GAO, plaintiffs show that they were not relying to their detriment on defendant's alleged misrepresentations.

There is nothing in the language of the Act that would support plaintiffs' belief that the pursuit of administrative relief is a prerequisite to bringing an action in this Court. Section 216(b), which establishes a claim against an employer who fails to pay overtime wages, provides in relevant part that an action to recover back wages or overtime wages "may be maintained \* \* \* in any Federal or State court of competent jurisdiction by any one or more employees \* \* \*." There is no reference in § 216(b) to any administrative prerequisite prior to filing suit in this court. Likewise, in § 255(a) of the Act, which sets forth the statute of limitations period, there is no reference to administrative proceedings tolling or otherwise affecting the time limitations prescribed for court actions. The language of the statute states that an action "to enforce any cause of action for \* \* \* overtime compensation under the Fair Labor Standards Act \* \* \* may be commenced within 2 years after the cause of action accrued, and every such action shall be barred forever unless commenced within 2 years after the cause of action accrued \* \* \*." 29 U.S.C. § 255(a).

In view of the clear statutory language and supporting case law, it is difficult to envision why plaintiffs should have to rely on defendant's representations at all. The Act simply sets forth those requirements for petitioning a court to review an employer's denial of a request for overtime wages.

■ Plaintiffs allege that the 3-year statute of limitations period set forth in 29 U.S.C. § 255(a) is applicable to their claims because any violation of the FLSA by defendant was willful. Plaintiffs support this assertion by citing an earlier Claims Court decision, *Hickman v. United States*, 10 Cl.Ct. 550, 553–54 (1986):

> *Coleman v. Jiffy June Farms, Inc.*, 458 F.2d 1139, 1142 (5th Cir.1971), *cert. denied*, 409 U.S. 948, 93 S.Ct. 292, 34 L.Ed.2d 219 (1972) held that the standard for determining willfulness is whether the employer know that the FLSA was "in the picture."

> Although few courts have deviated from *Jiffy June's* standard, the adherence is not completely slavish. Examining the § 255(a) "willfulness" language in an Equal Pay Act claim, the court in *Laffey v. Northwest Airlines, Inc.*, 567 F.2d 429 (D.C.Cir.1976), *cert. denied*, 434 U.S. 1086, 98 S.Ct. 1281, 55 L.Ed.2d 792 (1978), opted for a more limited standard. The court would find an employer's noncompliance willful "when he is cognizant of an appreciable possibility that he may be subject to the statutory requirements

and fails to take steps reasonably calculated to resolve the doubt." 567 F.2d at 462.

*Id.*

While the *Laffey* standard was adopted by the Claims Court in *Hickman,* the Supreme Court has since rendered a decision regarding the willfulness standard.

The Court in *McLaughlin v. Richland Shoe Co.,* 486 U.S. 128, 108 S.Ct. 1677, 100 L.Ed.2d 115 (1988), held that the *Jiffy June* standard of willfulness, *supra,* "virtually obliterates the distinction between willful and nonwillful violations, * * *." *Id.* 108 S.Ct. at 1679. Also rejected is

> the intermediate alternative [*Laffey* standard] * * *
>
> [The *Laffey* standard] differs from *Jiffy June* because it would apparently make the issue in most cases turn on whether the employer sought legal advice concerning its pay practices. It would, however, permit a finding of willfulness to be based on nothing more than negligence, or perhaps, on a completely good-faith but incorrect assumption that a pay plan complied with the FLSA in all respects. We believe [the *Laffey* proposal], like the discredited *Jiffy June* standard, fails to give effect to the plain language of the statute of limitations.

*Id.* 108 S.Ct. at 1682.

The Supreme Court determined that for a 3–year limitations period applicable to actions arising out of willful violations of the FLSA to apply, the standard espoused in *Trans World Airlines v. Thurston,* 469 U.S. 111, 105 S.Ct. 613, 83 L.Ed.2d 523 (1985), must be adopted.

> The standard of willfulness that was adopted in *Thurston*—that the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the [FLSA] statute—is surely a fair reading of the plain language of the Act.

*Id.* 108 S.Ct. at 1681.

Accordingly, plaintiffs reliance upon the standard of willfulness enunciated in *Hick-*

*man* and cases cited therein is misplaced. Because they fail to allege that the Forest Service knew or showed reckless disregard as to whether its conduct was prohibited by the FLSA, plaintiffs are limited to the FLSA's 2–year statute of limitations.[7]

■ In dismissing plaintiffs' evening overtime compensation claims for lack of subject-matter jurisdiction, the Court concludes that the 2–year statute of limitations in § 255(a) begins to run as of the date of the alleged violations of the FLSA. Subsequent administrative proceedings do not affect the running of this statutory period. As this claim is deemed filed on May 26, 1987, all plaintiffs' claims which accrued before May 26, 1985, are barred, leaving this Court without jurisdiction to decide plaintiffs' evening compensation claims.

*Mealtime Claims*

■ Plaintiff Nerseth's claim for compensation during those meal periods she performed telephone and radio duty accrued more than 2 years before the time she filed suit and, therefore, cannot be heard by this Court. Some of plaintiff McChesney's claim for mealtime compensation falls within this Court's subject-matter jurisdiction.

McChesney contends that he was not relieved from duties during his scheduled meal periods during pay periods 14–26 in 1984, 1–26 in 1985, 1–26 in 1986 and 1–6 in 1987. He seeks compensation in the amount of $933.06. During the pay periods listed above, McChesney alleges that he was the only dispatcher at his duty station and that he was frequently interrupted with telephone and radio calls during meals.

While compensation for the 1984 pay periods is clearly time-barred by the applicable 2–year statute of limitations,[8] pay periods 1 through 26 in 1985 must be fur-

---

7. Plaintiffs simply allege that defendant's conduct amounted to a willful violation of the Act.

8. The 2 year statute of limitations applies to each of McChesney's mealtime claims, as willfulness was not alleged. As stated in *Beebe v. United States,* 226 Ct.Cl. 308, 324, 640 F.2d 1283,

ther classified into corresponding dates. It is presumed that a pay period runs for 2 weeks; the first period running from January 1st through 14th, and so on. Based upon this timetable presumption, pay periods 1 through 10 of 1985 (approximately January through most of May), are time-barred by the 2–year limitations period. Thus, only periods 11 through 26 in 1985 present a viable claim.

McChesney cites a number of cases for the proposition that if an employee is required to perform any duties, whether active or inactive while eating, he is not considered to have been relieved from work.[9] Cases cited by McChesney, however, are not binding precedent for this Court.

Defendant contends that the mere fact that an employee may be required to handle calls during mealtime needing immediate attention does not render all mealtime compensable. *See Baker v. United States,* 218 Ct.Cl. 602, 620 (1978); *Bantom v. United States,* 165 Ct.Cl. 312, 313, *cert. denied,* 379 U.S. 890, 85 S.Ct. 161, 13 L.Ed.2d 93 (1964); *Agner v. United States,* 8 Cl.Ct. 635, 637 (1985), *aff'd,* 795 F.2d 1017 (Fed. Cir.1986). Defendant also argues that it is impossible to determine from the complaint whether the amounts of overtime pay claimed include those meal periods when McChesney simply ate lunch at the dispatch office and performed little, if any, work. Such time is not compensable. The Forest Fire Management Officer issued the following memorandum dated April 30, 1984:

There will be occasions when the dispatch office will have single dispatch coverage. These hours will normally be known in advance. Meal periods during single dispatch coverage will be taken while in the dispatch office. *During*

*these meal periods dispatch will refrain from routine dispatch duties (mapping, fire reports, filing, etc.).* Phone will continue to be answered. If phone call requires business to be conducted, compensable overtime will be paid. However, if business can wait until end of meal period, advise caller you will return call shortly. Radio traffic requiring dispatches to false alarms, medical aids, fires, law enforcement incidents, recreation problems, etc. that require immediate action, compensable overtime will be paid in 15 minute increments. (Emphasis added.)

Furthermore, Forest Service Manual 6154.-21a.1 provides:

Bona fide meal periods are not considered as hours worked. When the employee's meal periods are uninterrupted except for rare and infrequent emergency calls, the meal periods are not considered worktime. *It is not necessary that an employee be permitted to leave the worksite for the time to be excluded from worktime.* (Emphasis added.)

Defendant asserts that the above section serves to inform dispatchers that they were not to perform their regular duties during meal periods and that only business requiring immediate attention should be handled, in which case compensation was provided.

■ Because Court of Claims and Federal Circuit decisions are binding precedent for this Court,[10] case law cited by defendant must be followed. It supports the proposition that an employer may require that an employee eat meals at the worksite or at any other designated place. The exception to the rule that meal time is not compensable occurs only when "substantial labor" is performed during that period. The Claims Court in *Agner, supra,* stated:

1293 (1981), "Plaintiffs do not claim that defendant's violation of the FLSA was willful. Therefore, the statute bars their recovery of any overtime compensation due them prior to July 24, 1977, their petition having been filed July 24, 1979."

9. *Mumbower v. Callicott,* 526 F.2d 1183 (8th Cir.1975); *Biggs v. Joshua Hendy Corp.,* 183 F.2d 515 (9th Cir.1950), *rev'd* 187 F.2d 447 (9th Cir. 1951); *Douglass v. Hurwitz Co.,* 145 F.Supp. 29 (E.D.Pa.1956); *Culkin v. Glenn L. Martin Neb.*

*Co.,* 97 F.Supp. 661 (D.Neb.1951), *aff'd,* 197 F.2d 981 (8th Cir.1952), *cert. denied,* 344 U.S. 866, 73 S.Ct. 108, 97 L.Ed. 671 (1952), *rehearing denied,* 344 U.S. 888, 73 S.Ct. 183, 97 L.Ed. 687 (1952); *Thompson v. Stock & Sons,* 93 F.Supp. 213 (E.D. Mich.1950), *aff'd,* 194 F.2d 493 (6th Cir.1952); *Seneca Coal & Coke Co. v. Lofton,* 136 F.2d 359 (10th Cir.1943), *cert. denied,* 320 U.S. 772, 64 S.Ct. 77, 88 L.Ed. 462 (1943).

10. *Cf. South Corp. v. United States,* 690 F.2d 1368, 1369–70 (Fed.Cir.1982).

If covered employees perform substantial duties during their lunch breaks they must be paid * * *. If they are relieved of substantial duties, they are following their own pursuits not the employer's * * *.

8 Cl.Ct. at 637.

In *Agner*, plaintiffs were members of a special police force for the Library of Congress and were required to remain on the library premises, in uniform, and in possession of their firearms during lunch breaks. They were also required to carry two-way radios kept on during lunch, and any calls from supervisors, either in person or over the radio, were required to be answered. The Claims Court held that the meal periods were not compensable, stating that

the mere fact that an employee is required to eat lunch on the employer's premises and to be on a duty status, subject to emergency call during such period, does not convert this private leisure time into compensable time.

8 Cl.Ct. at 638 *quoting Baylor v. United States*, 198 Ct.Cl. 331, 364 (1972).

McChesney's claim involves similar facts as he was required to be within radio contact, and the type of duties performed appear as limited to "non-significant" radio and telephone coverage. Significant work was neither alleged nor seemingly likely. Merely being required to eat lunch at the dispatch office does not give rise to a FLSA overtime pay claim. Accordingly, defendant's motion for summary judgment must be granted.

## CONCLUSION

For the reasons discussed herein, defendant's motion to dismiss plaintiffs' overtime compensation claims for lack of jurisdiction is granted. Defendant's motion for summary judgment as to plaintiffs' remaining mealtime claims is hereby granted. The Clerk is directed to dismiss the complaint. No costs.

IT IS SO ORDERED.

United States Claims Court.