**Eric A. BEALE, et al., Plaintiffs,**

v.

**DISTRICT OF COLUMBIA, Defendant.**

**Civ. A. No. 91–0262.**

United States District Court,
District of Columbia.

March 9, 1992.

---

Ruthanne Greenberg Miller, Washington, D.C., for defendant.

Robert Edward Desco, Washington, D.C., for plaintiffs.

## MEMORANDUM OPINION

REVERCOMB, District Judge.

The parties in this case are currently before the Court on cross motions for summary judgment. This case is an addendum to the actions determined previously by this district court in *D'Camera v. District of Columbia*, 693 F.Supp. 1208 (D.D.C.1988) (*D'Camera I*), *D'Camera v. District of*

Columbia, 722 F.Supp. 799 (D.D.C.1989) (*D'Camera II*), and *Wyland v. District of Columbia*, 728 F.Supp. 35 (D.D.C.1990) *(Wyland)*. Based on the holdings in those cases and for the reasons set forth below, plaintiffs' motion for summary judgment is denied, and defendant's motion for summary judgment is granted.

In *D'Camera I*, Judge John H. Pratt held that the District of Columbia violated 29 U.S.C. § 207(*o*), a provision of the Fair Labor Standards Act (FLSA), when it paid Metropolitan Police officers ranked sergeant and below in compensatory time, rather than in money, for overtime worked between April 15, 1986, and October 1, 1987, in the absence an express agreement between the parties allowing for such a substitution. The two dates are the period from when the FLSA first applied to the District to when the parties adopted a collective bargaining agreement expressly authorizing so-called "comp" time payments for overtime worked. Section 207(*o*)(3)(A) allows comp-time payments to police officers for overtime up to a limit of 480 hours; overtime worked in excess of 480 hours must be paid in money under the statute. Judge Pratt's holding in *D'Camera I* rejected the District's argument that plaintiffs at the rank of sergeant were exempt from the FLSA's overtime provisions as "administrative employees" under 29 U.S.C. § 213(a)(1).

In *D'Camera II*, Judge Pratt decided the precise amount of damages to which the *D'Camera I* plaintiffs were entitled. Of first importance here, Judge Pratt noted that, subsequent to his decision in *D'Camera I*, the District had distributed back pay to the plaintiffs in amounts equal to time-and-a-half pay for each hour of overtime the plaintiffs worked during the 18–1/2 month violation period, minus two-thirds of this amount for each hour of comp time the plaintiffs used during the violation period.[1]

---

1. 29 U.S.C. § 216(b) provides that "[a]ny employer who violates the provisions of ... section 207 ... shall be liable to the ... employees affected in the amount of ... their unpaid overtime compensation, ... and in an additional equal amount in liquidated damages." 29

U.S.C. § 207(*o*)(1) provides that "[e]mployees of a public agency ... may receive ... compensatory time off at a rate not less than one and one-half hours for each hour of employment for which overtime compensation is required by this section." 29 U.S.C. § 207(*o*)(3)(A) provides

Judge Pratt found that this method of computing the back pay awards was fair and permissible under the FLSA. Judge Pratt next noted that under FLSA, an additional award of liquidated damages, in an amount equal to the back pay owed, was mandatory unless the District could show that, in paying comp time during the violation period, it had both acted in good faith and had reasonable grounds for believing it was not violating the FLSA. Judge Pratt held that the District had failed to make such a showing and, accordingly, that the District was liable to all plaintiffs, including sergeants, for liquidated damages in the amount of back pay.

In *Wyland,* a second group of police officers ranked sergeant and below brought suit based on the same violations adjudicated in the *D'Camera* suits. Based on the *D'Camera* holdings, the District conceded liability and damages and argued only that its FLSA violations were not wilful as to the *Wyland* plaintiffs who were ranked as sergeants. This was significant because a wilful violation of the FLSA extends the applicable statute of limitations under 29 U.S.C. § 255 from two years to three years. The *Wyland* suit was not commenced until July 26, 1988, and application of a two-year rather than three-year limitation to the sergeants would bar their recovery for about one-sixth of the violation period. Judge Pratt found no evidence that the District actually knew the sergeants were not exempt from the FLSA's overtime provisions, and he accordingly limited those plaintiffs to recovery for a period of two years dating back from the date of their complaint, while allowing those plaintiffs ranked below sergeant to recover for a period of three years prior to their complaint.

Plaintiffs in the case at bar filed their complaint on February 7, 1991. By their own description, plaintiffs are the "remaining" officers and sergeants who did not "opt-in" to the *D'Camera* and *Wyland* lawsuits.[2] Plaintiffs admit that they "never

that "an employee ... in a public safety activity ... may accrue not more than 480 hours of compensatory time for hours worked after April 15, 1986."

received monetary compensation for their accrued pre-October 1, 1987, FLSA comp time *solely* because they neglected to file opt-in forms in the *D'Camera* and *Wyland* cases." Plaintiffs' Memo in Support of Summary Judgment at 11. Furthermore, as to this pre-October 1, 1987, compensation, plaintiffs acknowledge that, under the normal operation of 29 U.S.C. § 255 as construed in Judge Pratt's decisions, recovery by both officers and sergeants would be barred by the three-year and two-year statute of limitations, respectively. Plaintiffs' Opposition to Cross–Motion for Summary Judgment at 2. Plaintiffs nonetheless ask this Court to award back pay and liquidated damages for overtime they worked during the violation period. Plaintiffs also ask for FLSA overtime accrued in excess of 480 hours since October 1, 1987, which they claim the District also has not paid. Complaint para. 34. The District argues that the pre-October 1, 1987, claim is time-barred. Defendant's Memo in Support of Summary Judgment at 7–8. It further argues that it has paid or is endeavoring to pay the post-October 1, 1987, overtime pay owed, that its delay in doing so have been caused by unavoidable administrative obstacles, and that its good-faith efforts preclude FLSA liability and imposition of liquidated damages. *Id.* at 12–16.

*Pre–October 1, 1987, Claims*

■ Plaintiffs' basis for their pre-October 1, 1987, claims is not immediately apparent from their pleadings. Plaintiffs initially contend that the reason *they,* unlike the *D'Camera* and *Wyland* plaintiffs, took no legal action against the District until February 1991 is because the police department, and specifically Police Chief Isaac Fulwood, had made representations until December 1990 that the department would pay *all* of its officers and sergeants for the pre-October 1, 1987, comp time accrued, whether or not the officers and sergeants were *D'Camera* or *Wyland* plaintiffs. Plaintiffs' Memo at 3, 5; Plaintiffs' State-

2. *See* 29 U.S.C. § 216(b) for opt-in provision.

ment of Material Facts Not in Dispute. In support of this contention, plaintiffs provide the affidavits of three officers of the Labor Committee of the Fraternal Order of Police, all of whom attribute such representations to Chief Fulwood; Chief Fulwood replies in his own affidavit that he does not recall making such representations. Plaintiffs might also point to the fact that, on December 2, 1990, the District's central payroll office issued settlement checks to officers who were not *D'Camera* or *Wyland* plaintiffs, and that in a December 13, 1990, communication to "The Force," Chief Fulwood stated

> I do not have authority to compensate other [department] members who are not plaintiffs.... The additional checks for non-plaintiffs were printed by central payroll in error. We have been directed to return them for cancellation....

Plaintiffs' Memo, Exhibit D.

Despite plaintiffs' assertion of false representations attributable to the defendant, however, plaintiff's do not ask this Court to allow for an equitable tolling of the statute of limitations until December 13, 1990, at which time they allege that Chief Fulwood, by the above communication, "inform[ed] all members of the [police department] for the first time that [it] would not pay" employees who were not *D'Camera* or *Wyland* plaintiffs. Rather, plaintiffs allege that

> from February 25, 1989 and up to the present, the District has deleted from the *Beale* plaintiffs' payroll records [*i.e.,* time and attendance sheet] their pre-October 1, 1987 FLSA overtime balance, thus depriving them of the use of their accrued FLSA overtime. The District admits that from February 25, 1989 up to the present that it has never paid for, restored, or made available for use to the *Beale* plaintiffs the FLSA overtime balance earned prior to October 1, 1987.

Plaintiffs' Memo at 5–6. Plaintiffs offer no authority for their conclusion that "[s]uch actions violate the FLSA." *Id.* In later pleadings, plaintiffs make clear their theory that

to the extent ... the employees may have let one cause of action lapse by failing to join in the *D'Camera* and *Wyland* suits, the District gave them a new cause of action when it again violated the FLSA by taking away their pre-October 1987 FLSA overtime in February 1989.

\* \* \* \* \* \*

Originally, the District was required to compensate the employees for the overtime hours by payment of money, under the rationale of the *D'Camera* and *Wyland* decisions. The District then was given the opportunity to compensate the [*Beale*] employees through use of the compensatory time, rather than money, because the [*Beale*] employees failed to join in the *D'Camera* and *Wyland* lawsuits. Now, however, by failing to utilize that alternative means of compensation, and by affirmatively acting in 1989 to deprive the employees of any compensation ..., the District has once again violated ... FLSA.

Plaintiffs' Opposition at 3–4, 9–10. As a further twist to this convoluted cause of action, the plaintiffs, having claimed injury based on the alleged deprival of comp time, eschew this comp time and claim a mandatory entitlement under 29 U.S.C. § 216(b) to back pay, liquidated damages and attorneys fees, the exact relief they would have gotten had they been plaintiffs in *D'Camera* and *Wyland.* Plaintiffs' Memo at 9, Plaintiffs' Opposition at 10–11, Complaint at Para. 34. Parenthetically, defendants neglect to consider in advancing their theory that application of the statute of limitations consistent with the *Wyland* ruling would seem to allow recovery for *Beale* officers only back to February 7, 1988, and for *Beale* sergeants only back to February 7, 1989.

For its part, the District argues, based on the affidavit of police department payroll supervisor Lieutenant Gary Clark, that during the violation period "all employees were awarded straight compensatory time *that had to be used within one year of being earned [or] was automatically lost.*" Defendant's Memo at 3–4 (emphasis added). Plaintiffs do not dispute this con-

tention. The District further contends based on Lieutenant Clark that during the violation period, FLSA comp time was manually recorded on all police time and attendance reports, that in October 1987 the payroll office began using an automated FLSA computation system and thus thereafter ceased manual recording, that during the *D'Camera* and *Wyland* lawsuits the payroll office certified all comp time earned and accrued during the violation period, and finally that these comp time records have not been deleted, but rather have been converted from time figures into dollar figures and preserved by the District's Office of Pay and Retirement, Office of Financial Management. *Id.* at 2–3. Again, plaintiffs do not dispute these assertions, but complain only that they "take little comfort from the fact that their thousands of hours of earned overtime have been converted to dollar amounts and are being preserved in the District's computer!" Plaintiffs' Opposition at 7–9. The District in turn denies that it improperly deleted records and argues that, in any event, the FLSA provides no private right of action to plaintiffs for any record-keeping violations. Defendants' Memo at 9–11.

Having considered both parties positions, the Court must agree with the District that plaintiffs' pre-October 1, 1987, claims are time-barred, but for somewhat different reasons than those set forth by the District. The effect of the cause of action asserted by the plaintiffs is to whipsaw the District by using the very behavior that Judge Pratt found illegal—the substitution of comp time for overtime pay—as a basis for a putative entitlement to comp time, the subsequent deprival of which the plaintiffs use as new basis for claiming injury. In point of fact, however, plaintiffs' actual cause of action is precisely the same as that of the *D'Camera* and *Wyland* plaintiffs; *i.e.,* one for deprival of pay *in money* for all overtime worked from April 15, 1986, through October 1, 1987.

As Judge Pratt found, police employees were entitled to pay in money *only* for overtime worked during that period because there was no collective bargaining agreement providing for payment in any other form. All police sergeants and officers wronged by the District's failure to pay had two and three years, respectively, under 29 U.S.C. § 255 to sue the District for the pay it owed, minus an amount for any comp time used, plus liquidated damages and attorneys fees. Payment in comp time for that period was not an option, then or now. The plaintiffs in this case decided to sue nearly five years after their cause of action initially accrued in April 1986, and their action is therefore time-barred. While the plaintiffs' decry this result as "callous," Opposition at 4, the Court notes that the entire purpose of statutes of limitations is to provide finitude to liability for wrongs.

■ The Court has considered on its own the equities of tolling the statute of limitations based on the plaintiffs' assertions, discussed above, of misrepresentations attributable to the District. Such equitable tolling would necessarily be based, *inter alia,* on a finding that plaintiffs *reasonably* relied on the misrepresentations. *See Nerseth v. United States,* 17 Cl.Ct. 660, 664–65 (1989) (plaintiff must remain ignorant without fault or want of diligence on his part); *Pfister v. Allied Corp.,* 539 F.Supp. 224, 227 (S.D.N.Y.1982) (delay in filing claim due to ignorance, inadvertence, or last minute change of heart are insufficient reasons for equitable tolling). As already noted, plaintiff provides the affidavits of three bargaining unit members of the Fraternal Order of Police attesting to Chief Fulwood's statement at a FOP Executive Board breakfast meeting prior to the *Wyland* decision that he intended to pay all officers for pre-October 1987 overtime; one of these affiants further attests to such representations by Chief Fulwood "on more than one occasion." The Court finds that, assuming such representations were in fact made, there is no evidence or argument that plaintiffs in this case knew of them or personally relied on them, and if they had, such reliance would have been unreasonable, particularly given plaintiffs' own assertion that "approximately one-half of the officers and sergeants on the police force filed [opt-in] consent forms and be-

came party plaintiffs" in the *D'Camera* and *Wyland* suits. Plaintiffs' Memo at 2. The Court therefore declines to toll the statute *sua sponte.*

*Post–October 1, 1987, Claims*

■ In their complaint, plaintiffs charge the District with "willfully failing and refusing to pay plaintiffs and others at the rate of time and one-half the regular rate due them for all additional overtime hours earned and accrued above 480 hours." Para. 14. They seek a judgment declaring their entitlement to overtime pay and liquidated damages in the amount of that pay. Para. 43 a. and b.

The District came into compliance with the FLSA's comp time provisions on October 1, 1987, with adoption of its collective bargaining agreement with the FOP's Labor Committee. *D'Camera II,* 722 F.Supp. at 801. As already noted, defendant's payroll office implemented an automated system at that time to compute and maintain FLSA balances. As the District points out, there is no evidence in the record as to when following October 1987 the plaintiffs' overtime hours, or any police officer's overtime hours, reached the 480–hour threshold at which cash payment is required by 29 U.S.C. § 207(*o* )(3)(A). Defendant's Reply at 6.

What is apparent is that in January 1990, thirteen days after entry of the *Wyland* decision, Chief Fulwood stated in a letter to the FOP's chairman that the payroll staff was auditing the leave records of all officers who had FLSA comp time balances over 480 hours in preparation for payment to those officers for their excess overtime. Plaintiffs' Memo, Exhibit E. Payroll Supervisor Lieutenant Clark asserted in his affidavit, dated July 30, 1991, that this audit and subsequent updating stopped between October 1990, when Clark became payroll supervisor, and March 1991 when three key payroll office employees retired and when it was ascertained that no system was in place to control accrual of FLSA overtime above 480 hours. Clark further asserted that up to March 1991, due to continued understaffing in payroll, pay-

ments of FLSA overtime were not made to 94 officers who had been identified as eligible by that date, and that payroll resources were additionally strained at that time by efforts to comply with a civil case settlement and the court order in *Wyland.* Thereafter, temporary staff were detailed to continue the audits and train the police department's timekeepers in a mechanism designed to control FLSA overtime balances, according to Clark. Since April 1991, Clark asserted, the District has been automatically paying officers whose pay records had already been audited for FLSA overtime hours accrued in excess of 480, including six of the *Beale* plaintiffs, and he predicted completion of the audits by late-November 1991.

In a second affidavit submitted to this Court in January 1992, Clark advised the Court of what is apparently a second audit, begun in September 1991, that "has proven necessary because many of the time and attendance clerks in the field have not been computing and recording regular and FLSA compensatory time properly." Clark stated that

> [t]here are presently 145 members whose FLSA banks are in excess of 480 hours. Consequently, we currently have 145 files to audit. Of the 145 files, 90 have been audited. Of the 90 files which have been audited, 23 members are due more FLSA compensatory time than is currently in their banks and 65 have balances which are higher than they should be. Of the 90 members audited, 63 are eligible to be paid overtime in lieu of earning any more FLSA compensatory time and their unit time and attendance clerks have been advised of this and instructed in the necessary procedures. . . . On the basis of the completed audits, we have authorized time and attendance clerks to pay overtime to 63 members rather than have their FLSA compensatory time balances exceed the 480 hours maximum any further.

Para. 9, 10. In a later pleading filed last month, the District sets forth an administrative procedure it will follow that addresses a number of specific concerns raised by the plaintiffs about the accuracy

of the audit and provides for notification to individual officers affected and a process for pursuing waivers and appeals. The pleading also states that the audit process is continuing and assures the Court that pre-audit leave balances are being maintained in the event of contested claims. Defendant's Reply to Plaintiffs' Opposition to Reconsideration of the Preliminary Injunction at 5–8. The Court notes parenthetically that, on January 14, 1992, in response to plaintiffs' motion that was not timely opposed by the District, the Court imposed a preliminary injunction prohibiting the District from deleting FLSA compensatory time from plaintiffs' time and attendance records.

The plaintiffs have provided no evidence that contradicts Lieutenant Clark's sworn recitation of circumstances underlying the District's delay in ascertaining and paying the FLSA overtime owed, nor have they provided case law support for their liquidated damages demand other than the *D'Camera* and *Wyland* cases. *See* Plaintiffs' Opposition at 11–16. Affidavits provided by three individual plaintiffs serve only to question the accuracy of the audits and the accountability of the auditors (Plaintiffs' Opposition to Reconsideration of the Preliminary Injunction, Exhibits A–C). For its part, the District acknowledges its responsibilities under 29 U.S.C. § 207(*o*)(3)(A), as well as its failure to date to comply with those duties. Defendant's Memo at 12–13. In seeking to avoid imposition of liquidated damages for this non-compliance, the District points to the actions described by Lieutenant Clark, including the fact that some FLSA payments are being made, as well as to the unavoidability of the delays to those actions as evidence of the District's ongoing good faith efforts to fulfill its duties to its police officers.

Under 29 U.S.C. § 260, an award of liquidated damages is mandatory in actions for unpaid FLSA overtime compensation unless "the employer shows to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that [the employer] had reasonable grounds for believing that his act or omission was not a violation of the" FLSA.

While at first blush the language of this provision might indicate a liquidated damages award in this case given the District's admission that it has yet to comply with the FLSA from October 1, 1987, to date, the Court is unable to locate precedent interpreting this provision in which liquidated damages were sought or awarded for *delays* in bona fide efforts to comply with the Act. It is clear that liquidated damages under the FLSA are not intended to penalize employers but rather to compensate employees for delay in receiving their lawful compensation. *Donovan v. United States Postal Service*, 530 F.Supp. 894, 901 (D.D.C.1981); *Dalheim v. KDFW, TV*, 712 F.Supp. 533, 536 (N.D.Tex.1989). In the normal circumstance, however, such as the *D'Camera* and *Wyland* cases, the delay compensated is that during which the employer is in unreasonable or bad faith non-compliance with the Act, and not that during which it acknowledges a duty under the Act and is endeavoring to comply. *See* Romualdo P. Eclavea, Annotation, *Liquidated Damages for Violation of Wage and Hour Provisions of Fair Labor Standards Act*, 26 A.L.R.Fed. 607 (1976 & Supp. 1991). The Court attributes the apparent dearth of case law covering the latter circumstance in part to the inapplicability of FLSA Section 207(*o*) to public agencies such as the beleaguered Metropolitan Police until April 15, 1986. *D'Camera I*, 693 F.Supp. at 1213.

Given the apparent absence of a mandate to award liquidated damages under the circumstances of this case, the Court declines to do so based on Lieutenant Clark's uncontested representations regarding the unavoidable delays besetting his office and its ongoing good faith efforts to comply with the Act, including accurate assessment of the amounts of FLSA overtime and pay owed. This decision is in no way intended to preclude or limit some future finding of an FLSA violation and award of liquidated damages based on the District's eventual failure to pay its officers the wages they are owed. On the contrary, the Court directs the District to complete its audits and

pay all FLSA overtime owed at the very earliest possible time.

For the reasons stated, summary judgment is entered in favor of the defendant, and the Court's January 14, 1992, preliminary injunction of the defendant is vacated.