Michael HASKEN, et al., Plaintiffs;

v.

The CITY OF LOUISVILLE, Defendant.

No. CIV.A. 3:00CV–546–S.

United States District Court, W.D. Kentucky, at Louisville.

March 1, 2001.

Ann B. Oldfather, Oldfather & Morris, Louisville, KY, for plaintiffs.

Denise L. St. Clair, J. Michael Brown, Sr., Edwin S. Hopson, Mitzi Denise Wyrick, Wyatt, Tarrant & Combs, Louisville, KY, for defendant.

## MEMORANDUM OPINION

SIMPSON, Chief Judge.

This matter is before the court for consideration of the motion of the defendant, the City of Louisville ("City"), for judgment on the pleadings pursuant to Fed. R.Civ.P. 12(c) or, in the alternative, for summary judgment pursuant to Fed. R.Civ.P. 56. The City makes several arguments in support of its motion, each of which will be discussed below.

## BACKGROUND

This case involves the method by which City firefighters have been compensated over the last several years pursuant to a series of Collective Bargaining Agreements ("CBAs") between the City and the Louisville Professional Firefighters Association, Local Union 345, IAFF AFL–CIO–CLC ("Union"). The plaintiffs, two retired

City firefighters, claim that by miscalculating their hourly rate of pay for purposes of determining overtime compensation, the City has underpaid its firefighters in violation of the Fair Labor Standards Act, 29 U.S.C. §§ 201, *et seq.* ("F.L.S.A."), and Kentucky wage and hour laws, Ky.Rev. Stat. Ann. §§ 337.010–.550 ("KRS § 337"). The plaintiffs also allege that because these statutes were implicitly incorporated into the various CBAs, the City is additionally liable under a common law breach of contract theory.

The pleadings and motions filed in this matter indicate that several facts are undisputed:

1. City firefighters generally work a 24 hour day and then are off duty 48 hours before working another 24 hour day. As a result, in a given seven-day week, a firefighter typically works either 48 or 72 hours.

2. The amount of time a firefighter works in excess of 40 hours per week because of this schedule is considered "scheduled overtime."

3. In addition to scheduled overtime, a firefighter may choose to work additional overtime hours, over and above his or her scheduled hours, referred to as "unscheduled overtime."

4. City firefighters are paid an annual salary which compensates them for forty hours of work per week. Firefighters are also paid "other categories of compensation" which include various salary supplements such as "education incentive pay" and "longevity pay." *See* Pls.' Resp. at 1–2 (DN 51).

5. For overtime hours worked, firefighters are paid one and a half times their "hourly rate of pay." The CBA fails to state the method by which a firefighter's hourly rate of pay is to be calculated.

6. The City's practice in the past has been to include the salary supplements, including those mentioned above, in calculating a firefighter's hourly rate of pay for unscheduled overtime but not in its calculation of compensation for scheduled overtime.

Based on these facts, the plaintiffs claim that by failing to include the various supplements in its calculation of the hourly rate of pay for scheduled overtime, the City has underpaid the plaintiffs and other similarly situated firefighters for the past several years. According to the plaintiffs, this underpayment violates the F.L.S.A. and KRS § 337. The plaintiffs also contend that the City has breached its contract by violating these statutes.

The City's motion is captioned, "Motion for Judgment on the Pleadings and/or for Summary Judgment or, in the alternative, for Stay of Proceedings." In it, the City makes the following requests of this court: (1) Dismiss the plaintiffs' entire Complaint, or, in the alternative, stay proceedings in this matter out of deference to an allegedly ongoing state administrative investigation; (2) Dismiss Count II of the plaintiffs' Complaint with respect to all plaintiffs whose claims are time barred by the F.L.S.A. statute of limitations; (3) Dismiss for lack of subject matter jurisdiction Counts I and III of the plaintiffs' Complaint.

## STANDARD OF REVIEW

We must first determine whether to review the City's motion under Fed.R.Civ.P. 56 ("Rule 56") or under Fed.R.Civ.P. 12(c) ("Rule 12(c)"). Rule 12(c) states that "[a]fter the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings." Because the pleadings are closed in this matter, it appears that it would be proper for this court to review

the City's motion as a Rule 12(c) motion. However, Rule 12(c) continues:

> If, on a motion for judgment on the pleadings, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

Along with its motion and memorandum in support thereof, the City submitted the affidavit of Nesa Hall, Assistant Director of Human Resources for the City of Louisville ("Ms.Hall"). Attached as exhibits to her affidavit are the current CBA between the City and the Union, a Courier–Journal newspaper article, correspondence between various individuals, and a partial list[1] of individuals who wish to join the plaintiffs' action should it be certified as a class action and their respective dates of employment as City firefighters. Our consideration of matters outside the pleadings would normally convert the City's motion to a Rule 56 motion for summary judgment. *See Salehpour v. University of Tennessee*, 159 F.3d 199, 204 (6th Cir. 1998). However, materials that are "referred to" in the plaintiffs' complaint and which are "central to the plaintiffs' claim" may be considered part of the pleadings for the purpose of a Rule 12(b) motion. *See Greenberg v. Life Ins. Co. of Virginia*, 177 F.3d 507, 514 (6th Cir.1999). Therefore, it may be proper for us to consider the CBA and the newspaper article without converting the City's motion to a motion for summary judgment. *See* Compl. at ¶¶ 21, 22, 27. As discussed below, however, it is unnecessary for us to make this determination.

The interest in allowing a nonmoving party to respond with its own exhibits and affidavits to a Rule 12(c) motion which has been converted to a Rule 56 motion is not implicated in this matter. As discussed below, we will grant only that part of the City's motion which concerns this court's subject matter jurisdiction over Count III of the plaintiffs' Complaint. Because our dismissal of Count III is based solely on the pleadings filed by the parties, withholding judgment until the plaintiffs supplement their briefs with supporting affidavits or exhibits is unnecessary. With regard to Counts I and II, the plaintiffs are in no way prejudiced by their inability to supplement their briefs pursuant to Rule 56.[2] Therefore, because the City's motion will be analyzed as both a motion for judgment on the pleadings and a motion for summary judgment, we must set forth the standards of review for both Rule 12(c) and Rule 56.

"For purposes of a motion for judgment on the pleadings, all well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment." *Southern Ohio Bank v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 479 F.2d 478, 480 (6th Cir.1973) (citation omitted). "The motion is granted when no material issue of fact exists and the party making the motion is entitled to judgment as a matter of law." *U.S. v. Moriarty*, 8 F.3d 329, 332 (6th Cir.1993) (citations omitted).

---

1. Since the City filed its motion on October 20, 2000, several additional individuals have filed a "Notice of Consent and Joinder."

2. This analysis also applies to the objection raised by the plaintiffs to the supplemental affidavit and exhibits filed by the City in connection with their reply brief. *See* Def.'s Reply (DN 60).

A motion for summary judgment will be granted only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). According to the Supreme Court, the standard is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52, 106 S.Ct. 2505, 91 L.Ed.2d 202, (1986).

## DISCUSSION

### I. Abstention [3]

■ The City argues that because the plaintiffs' claims are currently under investigation by "the administrative body charged by the Commonwealth with the authority to do so," we should defer to that administrative agency and abstain from reviewing the plaintiffs' Complaint, at least until that investigation is completed. *See* Def.'s Mem. in Supp. at 8 (DN 24). On the record before us, however, we do not believe that either abstention or a stay of proceedings is appropriate.

■ The City first contends that under the authority of *Colorado River Water Conservation Dist. v. U.S.*, 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976), abstention on the part of this court is proper.[4] However, in order for a party to invoke the *Colorado River* doctrine, there must exist a *"parallel,* state proceeding." *Crawley v. Hamilton County Com'rs*, 744 F.2d 28, 31 (6th Cir.1984). Without such a parallel proceeding, considerations such as piecemeal adjudication, duplicative litigation, and the misallocation of judicial resources with which the *Colorado River* Court was concerned are not implicated. *See Colorado River*, 424 U.S. at 817, 96 S.Ct. 1236.

■ Here, there is no such parallel state proceeding. In the affidavit and accompanying exhibits filed with the City's motion there are references to a "complaint" filed with the Kentucky Labor Cabinet ("the Cabinet") and an ongoing "investigation." *See* Affidavit of Ms. Hall at ¶ 7, Ex. 3. However, we do not understand the *Colorado River* doctrine to extend to state administrative proceedings. Neither the decisions cited by the City in its brief nor this court's own review of relevant case law indicates that state administrative proceedings have been considered by courts to be parallel with an action brought in federal district court. Therefore, we will decline to abstain from considering the plaintiffs' claims based on the *Colorado River* doctrine.

■ The City alternatively contends that abstention by this court is proper pursuant to the Supreme Court's holding in *Burford v. Sun Oil Co.*, 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943). The *Burford* doctrine permits federal courts to abstain from deciding cases "when there is a need to defer to complex state adminis-

---

**3.** We note at the outset that abstention "is an extraordinary and narrow exception to the duty of a district court to adjudicate a controversy properly before it." *Allegheny County v. Frank Mashuda Co.*, 360 U.S. 185, 188–89, 79 S.Ct. 1060, 3 L.Ed.2d 1163 (1959).

**4.** Technically, the *Colorado River* doctrine is not a form of abstention. *See Colorado River*,

424 U.S. at 817–18, 96 S.Ct. 1236. However, "the distinction has been lost," and, therefore, we will conform to the practice of other lower courts and refer to the *Colorado River* doctrine as one of several forms of abstention. *See Richmond, Fredericksburg & Potomac R. Co. v. Forst*, 4 F.3d 244, 253 n. 20 (4th Cir. 1993) (citations omitted).

trative procedures." *MacDonald v. Village of Northport, Mich.,* 164 F.3d 964, 967 (6th Cir.1999). The Supreme Court has explained that the doctrine applies in either of two circumstances:

> Where timely and adequate state-court review is available, a federal court sitting in equity must decline to interfere with the proceedings or orders of state administrative agencies: (1) when there are "difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar"; or (2) where the "exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern."

*New Orleans Public Service, Inc. v. Council of City of New Orleans,* 491 U.S. 350, 361, 109 S.Ct. 2506, 105 L.Ed.2d 298 (1989) (hereinafter *"NOPSI"*) (quoting *Colorado River, supra,* 424 U.S. at 814, 96 S.Ct. 1236).

■■■ *Burford* abstention is generally proper only when the relief sought from the federal court "is equitable in nature or otherwise discretionary . . . ." *Quackenbush v. Allstate Ins. Co.,* 517 U.S. 706, 721, 116 S.Ct. 1712, 135 L.Ed.2d 1 (1996). In *Quackenbush,* the Court explained that "while we have held that federal courts may stay actions for damages based on abstention principles, we have not held that those principles support the outright dismissal or remand of damages actions." *Id.* The plaintiffs' Complaint indicates that this is an action for damages. No discretionary relief, injunctive or otherwise is sought by the plaintiffs. Therefore, according to *Burford, NOPSI,* and *Quackenbush,* we lack the authority to abstain from reviewing the plaintiffs' claims, and we may only stay these proceedings should we

find the circumstances appropriate. *See Quackenbush,* 517 U.S. at 730, 116 S.Ct. 1712.

■■■ We find it unnecessary to stay these proceedings at this time for several reasons. First, as noted above, the balance of state and federal interests "only rarely favors abstention . . . ." *Id.* at 728, 116 S.Ct. 1712. As the Court noted in *Colorado River,* abstention under any theory represents an "extraordinary and narrow exception to the duty of the District Court to adjudicate a controversy properly before it." *Colorado River,* 424 U.S. at 813, 96 S.Ct. 1236.

Second, a determination of the plaintiffs' rights under the F.L.S.A., a federal statute, can hardly be said to be an "essentially local problem." *NOPSI,* 491 U.S. at 362, 109 S.Ct. 2506. It goes without saying that federal district courts have a keen interest in adjudicating disputes involving any federal regulatory scheme as complex as the F.L.S.A.

Third, even if the subject matter of this suit and that of the state administrative investigation overlap, the City has failed to demonstrate that our review of this matter will "unduly intrude into the processes of state government or undermine the State's ability to maintain desired uniformity." *Id.* at 363, 109 S.Ct. 2506. *See also Quackenbush,* 517 U.S. at 727, 116 S.Ct. 1712 (noting that abstention is not required "whenever there exists [a state administrative process], or even in all cases where there is a 'potential for conflict' with state regulatory law or policy").

On the record before us, we can not conclude that the Cabinet investigation involves the same parties, the same claims, or even the same time periods as this suit. According to one of the exhibits attached to the affidavit of Ms. Hall, the state administrative investigation concerns poten-

tial violations of KRS § 337 which may have occurred during the past five years. *See* Affidavit of Ms. Hall, Ex. 3. Assuming this is the case, the plaintiffs' state common law and federal statutory claims will not be addressed by the Cabinet. The plaintiffs' claims with regard to the tolling of applicable statutes of limitations may also avoid administrative review. In light of the above, we will decline to abstain from reviewing any part of the plaintiffs' Complaint and the motion now before us.

## II. F.L.S.A. Statute of Limitations

■ The City contends that many of the plaintiffs' claims brought pursuant to the F.L.S.A. are barred by that Act's statute of limitations, 29 U.S.C. § 255 (" § 255"). § 255 states that an action for, *inter alia,* unpaid overtime compensation:

> (a) if the cause of action accrues on or after May 14, 1947–may be commenced within two years after the cause of action accrued, and every such action shall be forever barred unless commenced within two years after the cause of action accrued, except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued.

Even assuming for the purposes of argument that the City willfully violated the F.L.S.A., thereby triggering the extended limitations period, several of the plaintiffs' claims accrued prior to September 8, 1997, three years prior to the filing of the plaintiffs' Complaint. *See Freeman v. National Broadcasting Co., Inc.,* 846 F.Supp. 1109, 1159 (S.D.N.Y.1993) (noting that "[a] cause of action for overtime compensation accrues at each regular payday immediately following the work period during which services were rendered and for which overtime compensation is claimed").

However, the plaintiffs contend that the statute of limitations was tolled until the date they allegedly became aware of the City's violations, August 30, 2000, the day the Courier–Journal published an article detailing the potential underpayments. Alternatively, the plaintiffs contend that the City's actions constitute continuing violations of the F.L.S.A. and that those claims falling outside of the three year time period are, nonetheless, timely due to their similarity to violations which occurred during the three year period.

■ The doctrine of equitable tolling "is read into every federal statute of limitation." *Holmberg v. Armbrecht,* 327 U.S. 392, 397, 66 S.Ct. 582, 90 L.Ed. 743 (1946). While the doctrine has been variously defined, it is sufficient for our purposes to note that the statute of limitations will be tolled if the plaintiffs were "excusably unaware of the existence of his cause of action" or if their injury was "inherently unknowable." *See Nerseth v. U.S.,* 17 Cl. Ct. 660, 665 (Cl.Ct.1989); *Udvari v. U.S.,* 28 Fed.Cl. 137, 139 (Fed.Cl.1993) (citations omitted). In this case, the tolling issue depends upon whether or not the plaintiffs were reasonably unaware during the relevant pay periods that they were being underpaid by the City. *See Udvari,* 28 Fed.Cl. at 140 (finding that an F.L.S.A. claim accrues when the plaintiff "reasonably should have learned of his cause of action").

■ Such an inquiry is by nature fact-sensitive. The City contends that it posted notices, as required by federal law, regarding the plaintiffs' right to overtime compensation for any hours worked in excess of forty per week. Even if these notices were posted "continuously and conspicuously," they are insufficient to put the plaintiffs on notice of errors allegedly made in calculating their overtime pay. *See* Def.'s Reply at 12 n.5 (DN 60). The notices indicate only that overtime com-

pensation is to be paid at a rate of one and a half times an employee's regular hourly rate of pay. Were the issue in this case the City's *failure* to pay overtime compensation, these notices would be more applicable. *See Kamens v. Summit Stainless, Inc.*, 586 F.Supp. 324, 328 (E.D.Pa.1984). However, they do not address the critical issue in this case, that is, the *method* by which that hourly rate of pay is to be calculated. *See* Compl. at ¶¶ 24, 25 (alleging that the plaintiffs' overtime compensation must be calculated using their "regular rate" as opposed to their "annual rate").

Therefore, we conclude that there exist genuine issues of material fact as to whether the statute of limitations applicable to the plaintiffs' claims was equitably tolled until the publication of the Courier–Journal newspaper on August 30, 2000. The City's motion will, therefore, be denied without prejudice on that basis. We need not address at this time the issue of continuing violations.

## III. KRS § 337

■ Count III of the plaintiffs' Complaint is based solely on KRS § 337. *See* Compl. at ¶¶ 36–38 ("[T]he actions of the City constitute a violation of the rights of the Plaintiffs pursuant to KRS Chapter 337."). In such a case, Kentucky courts have held that their jurisdiction does not attach until after an administrative complaint is investigated pursuant to 803 K.A.R. 1:035 and an appeal is filed with the Kentucky Labor Cabinet pursuant to KRS § 13B.140–.170. *See Early v. Campbell County Fiscal Court*, 690 S.W.2d 398, 399 (Ky.App.1985); *Noel v. Season–Sash, Inc.*, 722 S.W.2d 901, 902–903 (Ky.App.

1986).[5] In circumstances similar to those with which we are presented, the *Noel* court stated:

> Thus, in those instances where an employee alleges he is not receiving the benefits mandated by the wage and hour chapter, we find no defect in KRS 337.310(1) which requires that he take such a complaint to the Commissioner of Labor for a hearing and resolution, subject, of course, to appropriate judicial review. . . . To reiterate, the Commissioner of Labor has original jurisdiction, as held in the *Early* case, only in those wage and hour disputes in which the duty to provide the benefits sought by the claimant derives solely from the statute and not from an agreement between the parties as to the terms and conditions of employment . . . .

*Noel*, 722 S.W.2d at 902–03.

Here, there was a contract between the Union and City, the alleged breach of which serves as one of the bases of the plaintiffs' suit. According to *Noel*, a Kentucky court would have original jurisdiction over such a claim. However, a claim which seeks recovery for an alleged violation of KRS § 337 must first be brought administratively. Because a Kentucky circuit court would be unable to hear the plaintiffs' claim which arises under KRS § 337, we, too, must decline to consider it. *See Haynes v. Marshall*, 887 F.2d 700, 705 (6th Cir.1989); *Promisel v. First American Artificial Flowers, Inc.*, 943 F.2d 251, 257 (2d Cir.1991). The City's motion for judgment on the pleadings with respect to Count III of the plaintiffs' Complaint will be granted, and Count III will be dismissed without prejudice.

5. While various provisions of KRS § 337 relevant to the plaintiffs' claims were amended subsequent to these decisions by the Court of Appeals of Kentucky, only the process by which an appeal is made was altered. *See, e.g.,* KRS § 337.310. Therefore, we believe that the current statutory scheme remains consistent with *Early* and *Noel*.

## IV. Breach of Contract

In Count I of their Complaint, the plaintiffs allege that the City breached its contract with City firefighters through its miscalculation and underpayment of overtime compensation. The City contends that the F.L.S.A. and KRS § 337 provide the exclusive remedies for this alleged miscalculation and underpayment and that the plaintiffs' breach of contract claim must be dismissed.

 Several courts have held that individuals who seek redress for the underpayment of wages are not limited to recovery pursuant to the F.L.S.A. or similar state statutes. *See, e.g., Bowe v. SMC Elec. Products, Inc.*, 916 F.Supp. 1066, 1071–72 (D.Colo.1996) (finding that "[the plaintiff] may recover on his breach of contract claim for unpaid overtime compensation to the extent that the statute of limitations exceeds the F.L.S.A. limitations period"); *Noel, supra*, 722 S.W.2d at 902–03. Our analysis of these decisions indicates that a party may properly allege breach of contract in addition to a statutory violation even when the only difference between the benefits provided by the contract and those provided by the statute is the limitations period applicable to a claim based on conduct prohibited by both the contract and the statute.

For example, in *Bowe*, the plaintiff sued his former employer for overtime compensation which allegedly went unpaid for a period of approximately fourteen years. *See Bowe*, 916 F.Supp. at 1070. His complaint alleged both a violation of the F.L.S.A. and breach of contract. *See id.* at 1069. In denying the defendant's motion for summary judgment on the breach of contract claim, the court held that merely by entering into a written contract, parties supplement the F.L.S.A. requirements. Therefore, the court held that a party who believes that the terms of the contract, which may or may not coincide with the provisions of the relevant statute, have been breached may sue for breach of contract. The court stated:

> An employer can contract to provide more protection against uncompensated overtime than FLSA requires. "[A]s a matter of logic, that greater protection can just as well take the form of a promise to pay for a longer time period (that is the limitations period for a written contract rather than FLSA's shorter limitations period), as, for example, the form of a promise to pay double time rather than time-and-a-half for overtime."

*Id.* at 1072 (quoting *Albee v. Village of Bartlett, Ill.*, 861 F.Supp. 680, 691 (N.D.Ill. 1994)).

 We agree with the City that the F.L.S.A. provides basic protection in the area of wage and hour regulation which states may supplement with statutes and which parties may supplement with written contracts. However, we also agree with the *Bowe* court's conclusion that parties may supplement the F.L.S.A. in several ways. One of these methods is the execution of a written contract. The eleventh circuit's holding in *Avery v. City of Talladega, Ala.*, 24 F.3d 1337 (11th Cir. 1994), is consistent with this conclusion. In *Avery*, the court noted that because the contract between employer and employee expressly incorporated relevant provisions of the F.L.S.A., the employee's rights under the contract were limited to those set forth in the statute. *See id.* at 1348. The court went on to reverse the district court's dismissal of the plaintiff's breach of contract claim and stated:

> If a violation of the FLSA has occurred, then a violation of the contract, which incorporates the FLSA, will have occurred as well.... Of course, the plaintiffs may not recover twice for the same

violation; the breach of contract claim survives merely as an alternative legal theory to redress any wrong that may have been done them.

*Id.* at 1348.

Based on this analysis and because the City has failed to cite any authority justifying a contrary conclusion, we adopt the reasoning of the courts referred to above. By entering into a written contract, the parties supplemented the requirements of the F.L.S.A. Therefore, the plaintiffs may properly bring suit against the city for the alleged breach of that contract. Such a claim is separate and distinct from any statutory claim also alleged by the plaintiffs. The City's motion with respect to the plaintiffs' breach of contract claim will be denied.

### CONCLUSION

For the foregoing reasons, the City's motion with respect to Count III of the plaintiffs' Complaint will be granted. For the same reasons, the City's motion with respect to Counts I and II of the plaintiffs' Complaint will be denied. Therefore, Count III of the plaintiffs' Complaint will be dismissed without prejudice. A separate order will be entered this date in accordance with this opinion.

### *ORDER*

Motion having been made, and the court being otherwise sufficiently advised, and for the reasons set forth in the accompanying memorandum opinion, **IT IS HEREBY ORDERED AND ADJUDGED** that:

1. The motion of the defendant, the City of Louisville, brought pursuant to Fed.R.Civ.P. 12(c), with respect to Count III of the plaintiffs' Complaint is **GRANTED**, and Count III of the plaintiffs' Complaint is **DISMISSED WITHOUT PREJUDICE**;

2. The defendant's motion with respect to all other justifications for dismissal of the plaintiffs' Complaint is **DENIED**; and

3. The plaintiffs' motion to strike the supplemental affidavit and exhibits filed by the City of Louisville, or in the alternative for leave to file a surreply, is **DENIED** as moot.