**Michael HASKEN, et al., Plaintiffs,**

v.

**The CITY OF LOUISVILLE, et al., Defendants.**

**Civil Action No. 3:00CV–546–S.**

United States District Court, W.D. Kentucky, At Louisville.

Dec. 17, 2002.

Ann B. Oldfather, Andrew J. Horne, Oldfather & Morris, Louisville, KY, for Plaintiffs.

Denise L. St. Clair, J. Michael Brown, Sr., Edwin S. Hopson, Mitzi Denise Wyrick, Angela McCorkle Buckler, Wyatt, Tarrant & Combs, Segal, Stewart, Cutler, Lindsay, Janes & Berry, Louisville, KY, Kembra Sexton Taylor, John David Parsons, Frankfort, KY, Herbert L. Segal, Thomas A. Woodley, Douglas L. Steele, Woodley & McGillivary, Washington, DC, for Defendants.

## MEMORANDUM OPINION

SIMPSON, District Judge.

This matter is before the court on cross motions for partial summary judgment on

the issue of equitable tolling pursuant to Fed.R.Civ.P. 56. (DN 165, 166) Both parties have extensively briefed the issues. We address equitable tolling only as it pertains to claims under the Fair Labor Standards Act.

## Background

This case involves the method by which the defendant, the City of Louisville ("City"), compensated its firefighters. Plaintiffs, Michael Hasken and Gregg Hasken, (hereinafter the term "Haskens" refers to all plaintiffs who have filed their consent to join the case) along with other current and retired firefighters, claim that by miscalculating their regular rate of pay for purposes of determining overtime compensation, the City has underpaid its firefighters in violation of the Fair Labor Standards Act, 29 U.S.C. §§ 201, *et seq.* ("FLSA").

In a previous opinion in this case dated March 1, 2001, we noted the following facts as undisputed:

1. City firefighters generally work a 24–hour day and then are off duty 48 hours before working another 24–hour day. As a result, in a given seven-day week, a firefighter typically works either 48 or 72 hours.

2. The amount of time a firefighter works in excess of 40 hours per week because of this schedule is considered "scheduled overtime."

3. In addition to scheduled overtime, a firefighter may choose to work additional overtime hours, over and above his or her scheduled hours, referred to as "unscheduled overtime."

4. For overtime hours worked, firefighters are paid one and a half times their "hourly rate of pay." The collective bargaining agreement fails to state the method by which a firefighter's hourly rate of pay is to be calculated.

5. Firefighters are also paid various salary supplements such as "education incentive pay" and "longevity pay."

6. The City's practice in the past has been to include the salary supplements, including those mentioned above, in calculating a firefighter's hourly rate of pay for unscheduled overtime but not in its calculation of compensation for scheduled overtime. *Hasken v. City of Louisville,* 173 F.Supp.2d 654, 657 (W.D.Ky. 2001).

The FLSA, 29 U.S.C. § 207(k), requires a public employer to provide overtime compensation at a rate of 1.5 times the regular rate to an employee engaged in fire protection activities when the employee works in excess of 53 hours in a 7–day work period. See 29 CFR § 553.201 et. seq. The term "regular rate" is defined in 29 U.S.C. § 207(e) to include "all remunerations for employment" paid to the employee, with certain limited exceptions. Therefore, under the FLSA, the City was required to include the salary supplements in the firefighters' regular rate of pay when calculating overtime payments. The practical result is that the City should have paid its firefighters overtime on the salary supplements they received. Therefore, the Haskens contend that the City has underpaid them in violation of the FLSA.

## Statute of Limitations

The City has made a motion to dismiss with prejudice all claims that fall outside of the applicable statutes of limitation. The Haskens urge this court to invoke the doctrine of equitable tolling to extend the statutes of limitation for all of their claims. However, for purposes of this opinion, we

limit our review of equitable tolling to the plaintiffs' claims under the FLSA, the area over which this court unquestionably has subject matter jurisdiction.

The statute of limitations which governs the FLSA, 29 U.S.C. § 255, provides that an action must be commenced within two years after a cause of action accrues, or it will be forever barred. 29 U.S.C. § 255(a). A cause of action arising out of a willful violation of the FLSA may be commenced within three years after the cause of action accrued. *Id.*

■ A cause of action for overtime compensation under the FLSA accrues at the regular payday immediately following the work period during which services were rendered and for which overtime compensation is claimed. *Hasken,* 173 F.Supp.2d at 661, citing *Freeman v. National Broadcasting Co., Inc.,* 846 F.Supp. 1109, 1159 (S.D.N.Y.1993).

■ The Haskens argue the City's violations of the FLSA constituted "continuing violations" of the law, precluding the application of any limitations period. However, because each violation of the FLSA gives rise to a new cause of action, each failure to pay overtime begins a new statute of limitations period as to that particular event. *Knight v. Columbus, Ga.,* 19 F.3d 579, 582 (11th Cir.1994). Therefore, the Haskens' continuing violation theory fails. The limitations period begins to run for each violation of the FLSA on the regular payday following the week during which the overtime was worked.

The FLSA, 29 U.S.C. § 256, clearly establishes that a case is considered to be commenced as to any individual claimant "(a) on the date when the complaint is filed, if he is specifically named as a party plaintiff in the complaint and his written consent to become a party plaintiff is filed on such date in the court in which the action is brought; or (b) [i]f such written consent was not so filed or if his name did not so appear, on the subsequent date on which such written consent is filed in the court in which the action was commenced."

■ In a representative action under the FLSA, the statute of limitations continues to run as to each individual plaintiff until he or she files a written consent to become part of the action. Filing of a representative action under the FLSA does not toll the statute of limitations pending determination of the maintainability of a representative action. *Groshek v. Babcock and Wilcox Tubular Products Division,* 425 F.Supp. 232, 234 (D.C.Wis. 1977).

Most of the plaintiffs who have filed their consent to join this case have retired from their positions with the City. Therefore, several years have passed since many of the plaintiffs last worked for or received a paycheck from the City. Absent equitable tolling, the FLSA claims of almost all of the plaintiffs in this case are barred by the statute of limitations, even if it is extended to three years as the result of willful violations.

Looking at the date when each plaintiff became part of this case, either by the filing of the original complaint or by written consent, only the claims of Ben Borgett, Edward Bryan, Bob Clem, Jack Kent Dayton, Michael J. Gramig, Gregg Hasken, Owen Miller, Keith E. Milliner, Patrick Riley, Joseph Shade, Kenneth Shope, and Robby J. White are not barred by a three-year statute of limitations.[1] Therefore, a

---

1. Since the filing of the cross motions for summary judgment, several plaintiffs have joined this case. Lacking evidence of the date these firefighters retired, we are unable to determine whether their claims are time barred.

finding on the issue of equitable tolling is necessary to determine whether circumstances warrant the preservation of the FLSA claim of any other plaintiffs.

### Equitable Tolling

■ The Sixth Circuit has repeatedly cautioned that equitable tolling should be granted only sparingly. *Amini v. Oberlin College,* 259 F.3d 493, 500 (6th Cir.2001), *citing Dunlap v. U.S.,* 250 F.3d 1001, 1008–09 (6th Cir.2001); *Graham–Humphreys v. Memphis Brooks Museum of Art, Inc.,* 209 F.3d 552, 560 (6th Cir.2000). Moreover, the doctrine is narrowly tailored, and permits a plaintiff to avoid the bar of the statute of limitations only if "despite all due diligence he is unable to obtain vital information bearing on the existence of his claim." *Archer v. Sullivan,* 129 F.3d 1263, 1997 WL 720406, *3 (6th Cir.1997)(unpublished table decision), *citing Cada v. Baxter Healthcare Corp.,* 920 F.2d 446, 451 (7th Cir.1990).

■ The Sixth Circuit has established a framework, originally laid out in *Andrews v. Orr,* 851 F.2d 146 (6th Cir.1988), for determining whether to equitably toll a statute of limitations. The standard encompasses five factors a court must consider:

1) Whether the plaintiffs lacked actual notice of their rights and obligations;
2) Whether they lacked constructive notice;
3) The diligence with which they pursued their rights;
4) Whether the defendant would be prejudiced if the statute were tolled; and
5) The reasonableness of the plaintiffs remaining ignorant of their rights.

*EEOC v. Kentucky State Police Dep't,* 80 F.3d 1086, 1094 (6th Cir.1996). Specifically, the Sixth Circuit has applied this standard to determine whether to allow equitable tolling in overtime cases under the FLSA. *Archer,* 129 F.3d 1263, 1997 WL 720406, *3.

■ The list of factors was not intended to be comprehensive, nor will each of the five considerations be material in all cases. Rather, "the propriety of equitable tolling must necessarily be determined on a case-by-case basis." *Graham–Humphreys v. Memphis Brooks Museum of Art, Inc.,* 209 F.3d 552, 561 (6th Cir.2000)(internal citations omitted). While these factors are not a perfect fit to the facts of this case, we consider each in turn.

### 1. Whether the plaintiffs had actual and constructive notice

In a previous opinion in this case, we recognized that the issue of equitable tolling ultimately turned upon "whether or not the plaintiffs were reasonably unaware during the relevant pay periods that they were being underpaid by the City." *Hasken,* 173 F.Supp.2d at 661.

On the issue of notice, the Haskens assert two theories. First, they argue that because of the complexity of the method of calculating overtime, and the confusing nature of the pay stubs, they were unable to discover the City was underpaying them. Second, they argue that even if they had known the City was not paying them scheduled overtime on the salary supplements, they did not know the City was legally obligated to do so.

The first issue is whether the Haskens knew the City was underpaying them scheduled overtime. A review of the record does not reveal the Haskens had any actual knowledge of the City's failure to include the supplements when calculating their scheduled overtime pay. The Haskens maintain that they had no actual knowledge, and the City has offered no evidence to rebut this contention.

Since the Haskens did not have actual knowledge, the appropriate inquiry is whether they had constructive knowledge such that they should have known that the city was underpaying them.

The Haskens have supplied this court with a plethora of evidence, including deposition excerpts from a number of witnesses and the video deposition of Denise Brewington, the senior investigator for the Kentucky Labor Cabinet. The Haskens offer this evidence to prove that the pay stubs were complex and that it was difficult to determine how the City calculated overtime pay.

However, the correct analysis is not whether the pay stubs were confusing, but whether they contained enough information to charge the Haskens with constructive notice of their injury. We conclude that despite the numerous notations and line items on the stubs, they provided enough information to require the firefighters to make further inquiries about whether they were receiving the correct amount of overtime. We first address the issue of constructive knowledge, and then examine the diligence with which the plaintiffs pursued their rights.

The Haskens have supplied the court with two actual pay stubs received by one of the firefighters in this case (attached as Exhibits A and B). There is nothing inherently unknowable about these pay stubs. In fact, they provide all the information necessary to put a reasonable firefighter on notice he was being underpaid. A comparison of the two pay stubs demonstrates that overtime was not paid on the salary supplements for the hours of scheduled overtime worked during the pay period.

Exhibit A shows the employee worked 80 hours of straight time during the pay period, and was paid $10.843 per hour, earning $867.44 in "Regular Base Pay." The employee worked 40 hours of "Scheduled Overtime." [2] Scheduled overtime was calculated by multiplying the "Regular Base Pay" rate, $10.843, by 40 hours, by 1.5, resulting in scheduled overtime payment of $650.58. The employee also worked 24 hours of "Overtime 1.5," which reflects pay for unscheduled overtime worked. The line on the stub shows payment for 24 hours of unscheduled overtime at $10.843 per hour, times 1.5, totaling $390.35.

There is no dispute that these lines were calculated and paid correctly.[3] This lawsuit revolves around the remaining line items, which consist of several salary supplements and two lines titled "Overtime on Special Pays."

Four of the salary supplements are shown on the Exhibits supplied to the court.[4] In Exhibit A, "Fire Incentive W/ Retire Gross" represents payment for State Educational Incentive Pay. In this pay cycle, the employee earned $115.39. The employee earned "Longevity Pay" of $219.36. The employee earned $81.25 in "Special Duty Fire," which represents the Salary Supplement. The "Clothing Allowance" had been paid at some other time

---

**2.** This stub represents a pay cycle where the firefighter worked a 72 hour week and a 48 hour week, resulting in 40 hours of scheduled overtime.

**3.** The various salary supplements paid during this period are not included in the hourly rate as it is used to calculate the "Scheduled Overtime" or "Overtime 1.5" lines of the stub. Therefore these lines do not provide any information about the payment of overtime on salary supplements and can be disregarded.

**4.** The five salary supplements which the Haskens received throughout the year are: State Educational Incentive Pay, Longevity Pay, Salary Supplement, July Non–Discretionary Bonus, and Clothing Allowance.

during the year, but it was not paid on this particular check.

Exhibit A also contains two lines titled "Overtime on Special Pays." These lines are linked to two of the supplements, the first to "Fire Incentive" and the second to "Longevity Pay." In Exhibit B, the employee received payment for 80 hours of straight time (regular base pay) totaling $867.44, and 16 hours of scheduled overtime totaling $269.23. No unscheduled overtime ("Overtime 1.5") was paid in Exhibit B. The same salary supplements paid in Exhibit A were paid in Exhibit B. However, Exhibit B contains no payment for "Overtime on Special Pays."

Thus, a comparison of Exhibits A and B demonstrates that "Overtime on Special Pays" was paid only when there was unscheduled overtime ("Overtime 1.5") and not when there was just scheduled overtime, as in Exhibit B. Scheduled overtime is worked during every pay period. But "Overtime on Special Pays" did not appear on every pay stub. It only appeared in pay periods when the firefighter worked unscheduled overtime. Therefore, the "Overtime on Special Pays" line could not represent any form of salary supplement payment for scheduled overtime, which is worked every pay period. (See Exhibits A & B). This disparity is apparent even if the numbers are disregarded.

The distinction between Exhibits A and B is sufficient to put the Haskens on constructive notice that they were receiving certain overtime payments in some weeks and not in others. A comparison of the two stubs would lead a firefighter to conclude that "Overtime on Special Pays" was not paid on scheduled overtime, but only on unscheduled overtime. The firefighter could easily confirm this conclusion by calculating the numbers on the pay stub.

Upon an analysis of the numbers it becomes apparent that overtime payments were made only on the "Fire Incentive" and the "Longevity Pay" and then only on unscheduled overtime hours worked. No salary supplement overtime was paid on the 40 hours of scheduled overtime worked. No salary supplement overtime was paid at all on the "Special Duty Fire." An explanation of the necessary calculations follows.

The employee earned $51.93 on the first "Overtime on Special Pays" line. To get this amount, the "Fire Incentive W/ Retire Gross," $115.39, was divided by 80, the number of regular hours worked. This resulted in $1.44, the amount of "Fire Incentive" the employee earned for each regular hour worked. To get the overtime payment, $1.44 was multiplied by 24, the number of hours of "Overtime 1.5" (unscheduled overtime) worked, to get $34.62. This number was then multiplied by 1.5. The result was $51.93, the number found on the first "Overtime on Special Pays" line.

The employee earned $98.71 on the second "Overtime on Special Pays" line. To get this amount, the "Longevity" pay, $219.36, was divided by 80, the number of regular hours worked. This resulted in $2.742, which was multiplied by 24, the number of hours of "Overtime 1.5" (unscheduled overtime) worked, to get $65.808. This number was then multiplied by 1.5. The result was $98.71, the number found on the second "Overtime on Special Pays" line.

While the required calculations are not simplistic, they are not concealed. It is reasonable to require a firefighter to look at the pay stub received at the end of each pay period and determine what the various lines represent. Even if the correct payments could not be determined, such information imposed a duty on the Haskens to inquire about whether the City was under-

paying them. The plaintiffs had a variety of resources at their disposal including supervisors, City officials, the Union, and counsel hired by the Union. Therefore, we cannot conclude the plaintiffs were reasonably unaware that they had not received scheduled overtime on the salary supplements.

█ The Haskens argue that even had they asked the City how their pay was calculated, they would have been told scheduled overtime was included in the salary supplement. To support this argument, they supply the testimony of Mac Unger, the City's Fed.R.Civ.P. 30(b)(6) representative. Mr. Unger, Executive Administrator for Finance and Budget for the City, testified that if anyone had asked, he would have told them that the salary supplements were intended to cover the full 56–hour workweek, and that each payment contained a scheduled overtime payment and a straight time payment.

There are two problems with the Haskens argument that Mr. Unger's statements would have prevented them from gaining notice that they were being underpaid. First, there is absolutely no evidence that the City actually gave this explanation to any firefighter, or asserted this theory before this litigation began. To the contrary, when questioned in his deposition, Mr. Unger testified that it was never communicated to the firefighters that the State Incentive pay had an overtime element embedded in it. See Deposition of Mac Unger, October 3, 2002 at 17, 20.

Mr. Unger also testified that he knew of no documents or writings to this effect, and that it was never the understanding of the Union that Longevity pay contained an overtime component. *See id.* Since there is no evidence that the Haskens knew of or personally relied on the representation of Mr. Unger, it cannot be the basis for equitable tolling. *Beale v. District of Columbia,* 789 F.Supp. 1172, 1177 (D.D.C.1992).

Second, even if the Haskens had asked Unger, and received the answer that the scheduled overtime was embedded in the salary supplements, a look at the pay stub would have revealed there is no way this explanation can be true.[5]

The second issue is whether the Haskens knew that the City was required by law to pay overtime on the salary supplements for scheduled overtime hours. Once again, there is no evidence that the Haskens had actual knowledge of the City's duty. Therefore, the question is whether they were on constructive notice of their rights under the FLSA.

The Sixth Circuit has clearly established that, "[i]t is well-settled that ignorance of the law alone is not sufficient to warrant equitable tolling." *Rose v. Dole* 945 F.2d 1331, 1335 (6th Cir.,1991)(per curiam)(internal citations omitted). See also *Graham–Humphreys,* 209 F.3d at 561. In *Rose,* the plaintiff petitioned the court to equitably toll the statute of limitations because he had been unaware of his rights under a federal statute. The court refused to grant equitable tolling solely on the

---

**5.** If the salary supplements did have embedded scheduled overtime, the amount of the salary supplements should have increased in weeks where more scheduled overtime was worked. Additionally, if this were true, it would appear to a firefighter who calculated the numbers that the City was over paying overtime on unscheduled hours. To calculate the regular rate for purposes of determining "overtime on special pays," the City divided the amount of the salary supplement by the number of regular hours worked in the pay period. If the salary supplements had a scheduled overtime component embedded, the city should have divided them by a larger number of hours (regular + 1.5 scheduled overtime). This would have resulted in a smaller supplement per hour. As a consequence, the total amount due on unscheduled overtime would have been smaller.

basis of the plaintiff's argument that he was ignorant of the law. In the case at bar, even where additional factors exist such as the complexity of the pay stubs, we conclude there is still insufficient evidence to warrant equitable tolling.

The FLSA, 29 U.S.C. 207(e), clearly defines the regular rate to include all remuneration for employment unless specifically excluded. The statute's language is not confusing or difficult to understand. Although the Haskens themselves may not have been aware of this statutory provision, such information was readily available had they only inquired. The Haskens were represented by the Union, and an attorney represented the Union in contract negotiations, including wage and hour matters. These circumstances were enough to put the Haskens on constructive notice of the City's duty.

Therefore, based on the evidence, we find that the plaintiffs were not reasonably unaware that they had not received scheduled overtime on the salary supplements.

## 2. Due diligence

There is no evidence that the Haskens made any attempt to understand or obtain clarification of the pay stubs. Further, there is no evidence of efforts on the part of any of the plaintiffs to question the amount of overtime they were receiving prior to the filing of this suit.

## 3. Prejudice to the City

When the FLSA was originally enacted in 1938, civil actions brought under it were governed by state statutes of limitation. *McLaughlin v. Richland Shoe Company*, 486 U.S. 128, 131, 108 S.Ct. 1677, 100 L.Ed.2d 115 (1988). However, in response to the courts' expansive reading of the FLSA, Congress enacted a statute of limitations to place a limit on employers' unanticipated contingent liability. *Id.* at 132, 108 S.Ct. 1677. If the statute of limitations was tolled in this case, the City would face liability for many years of unpaid overtime because the plaintiff failed to bring this claim at an earlier date. This would result in significant prejudice to the City.

## 4. Reasonableness of remaining ignorant

Finally, the Haskens were not reasonably unaware of the City's pay practices. As discussed above, they received pay stubs every two weeks. These pay stubs contained all the information necessary to put the Haskens on notice that the City was not paying the correct amount of overtime. Even if they could not have figured out the paycheck, they could have brought the problem to the attention of the City, a supervisor, or a union representative. Nothing the City said or did prevented plaintiffs from learning of their rights.

Having considered these factors, we find the Haskens have failed to carry the burden of proof necessary to justify tolling the statute of limitations in this case. They were not "excusably unaware of the existence of their cause of action," nor were their injuries "inherently unknowable." *Hasken*, 173 F.Supp 2d at 661.

Since we find equitable tolling inappropriate, the City's motion to dismiss the time barred claims must be granted. The FLSA claims of all plaintiffs who left the employment of the City of Louisville more than three years from the date they joined this suit will be dismissed. We reserve ruling on the issue of willfulness.

The motion of the City for partial summary judgment on the issue of equitable tolling will be granted by separate order.